1   Lina Balciunas Cockrell, Bar No. 238166
      lina@majlabor.com
2   **MESSING ADAM & JASMINE LLP**
    980 9th Street, Suite 380
3   Sacramento, California 95814
    Telephone:    916.446.5297
4   Facsimile:    916.448.5047

5   Attorneys for Dominique Clifton

6

7

8                  **UNITED STATES DISTRICT COURT**

9          **EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

10

11   DOMINIQUE CLIFTON,                          Case No.

12              Plaintiff,                        **COMPLAINT FOR VIOLATION OF
                                                  CIVIL RIGHTS, DECLARATORY AND
13        v.                                      INJUNCTIVE RELIEF**

14   UNITED STATES DEPARTMENT OF
     JUSTICE, JEFFREY A. ROSEN, as Acting
15   Attorney General of the United States,
     UNITED STATES BUREAU OF ALCOHOL,
16   TOBACCO, FIREARMS and EXPLOSIVES
     ("ATF"), REGINA LOMBARDO, as Acting
17   Director of the ATF, FEDERAL BUREAU of
     INVESTIGATION ("FBI"), CHRISTOPHER
18   WRAY, as Director of the FBI.

19              Defendants.

20

21

22

23

24

25

26

27

28

MESSING ADAM &
  JASMINE LLP          00095677-6
ATTORNEYS AT LAW
_____
          COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, DECLARATORY AND INJUNCTIVE RELIEF

1    Now comes Plaintiff, Dominique Clifton, by and through his attorneys, Lina Balciunas

2  Cockrell and Messing Adam & Jasmine LLP, hereby alleges and avers as follows:

3                                **I.  JURISDICTION**

4    1.    This case arises from the United States government's wrongful imposition of a

5  lifetime federal firearms restriction against Mr. Clifton that violates his constitutional rights to

6  bear arms and to due process of law, which brings the matter under the original and exclusive

7  jurisdiction of the federal courts of the United States of America.  Specifically, this action seeks

8  relief pursuant to 28 U.S.C. §§ 2201, 2202, and 2412, 5 U.S.C. § 702, and the Second, Fifth and

9  Fourteenth Amendments to the United States Constitution. Therefore, jurisdiction is founded on

10  28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States and

11  28 U.S.C. § 1336 in that the United States is a defendant.

12    2.    This Court has authority to award costs and attorney's fees pursuant to 28 U.S.C. §

13  2412.

14    3.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

15                       **II.  INTRADISTRICT ASSIGNMENT**

16    4.    This action is appropriate for assignment to Fresno because a substantial part of the

17  events or omissions giving rise to the claim occurred in Fresno County and because the plaintiff

18  resides in Fresno County.

19                                **III.  PARTIES**

20    5.    Plaintiff Dominique Clifton is a natural person and citizen of the state of California

21  and the United States, residing in Fresno County.

22    6.    Defendant Acting Attorney General Jeffrey A. Rosen currently heads the United

23  States Department of Justice ("USDOJ"), which is one of the U.S. agencies responsible for

24  enforcement of federal criminal laws.  Defendant Rosen has ultimate authority for supervising all

25  functions of the USDOJ, the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"),

26  an arm of the USDOJ and defendant Federal Bureau of Investigation ("FBI").  Defendant Rosen is

27  sued in his official capacity as United States Attorney General.

28  ///

MESSING ADAM &
JASMINE LLP
ATTORNEYS AT LAW

00095677-6

2

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, DECLARATORY AND INJUNCTIVE RELIEF

7.      Defendant USDOJ is a United States governmental agency presently enforcing the laws, customs, practices, and policies complained of in this action, including but not limited to 18 U.S.C. 922(g).

8.      Defendant ATF is the arm of the USDOJ responsible for enforcement of federal statutes and regulations involving the use, manufacture, ownership and possession of firearms, including the unconstitutionally broad ban challenged in this case. Defendant ATF is currently enforcing the laws, customs, practices and policies complained of in this action.

9.      Defendant Regina Lombardo is the Acting Director of the ATF and, in her official capacity, is presently enforcing the laws, customs, practices, and policies complained of in this action.

10.     Defendant FBI is an agency of the USDOJ. Defendant FBI is presently enforcing the laws, customs, practices, and polices complained of in this action.

11.     Defendant Christopher A. Wray, III is the Director of Defendant FBI and, in that official capacity, is presently enforcing the laws, customs, practices, and polices complained of in this action.

## IV.  STATEMENT OF FACTS

12.     In June 2001, Dominique Clifton was 13 years old.  He was in the eighth grade at Mt. Vernon Middle School in Los Angeles, California.

13.     Mr. Clifton was a typical early teenager.  He was popular among his peers at school, engaged in academic and extracurricular activities and was mentally healthy.

14.     When Mr. Clifton's mother died, his grandmother became his legal guardian.  Mr. Clifton's grandmother was married to a man who was physically and mentally abusive toward both Mr. Clifton and his grandmother.

15.     Struggling to cope with the loss of his mother and an abusive home life, one day while at his after school program, Mr. Clifton made statements about what he would like to do toward his step-grandfather in order to protect himself and his grandmother.

16.     Mr. Clifton never directly threatened his step-grandfather nor took any action to harm or attempt to harm his step-grandfather.

MESSING ADAM &
JASMINE LLP
ATTORNEYS AT LAW

00095677-6

3

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, DECLARATORY AND INJUNCTIVE RELIEF

17.     At no point has Mr. Clifton ever threatened use of or use a firearm against himself or others.

18.     The school called a "PET," or Psychiatric Emergency Team, which consisted of licensed mental health clinicians approved by the County of Los Angeles Department of Mental Health to provide Welfare and Institutions Code sections 5150 (adult) and 5585 (juvenile) evaluations.  What Mr. Clifton really needed, however, was a grief counselor.

19.     Mr. Clifton was hospitalized for mental health treatment at Gateways Hospital and Mental Health Center in Los Angeles, California for 15 days from June 12 through June 27, 2001.

20.     Neither Mr. Clifton nor his grandmother recall his hospitalization as being involuntary.  Neither Mr. Clifton nor his grandmother recall that they were notified of their due process rights to seek judicial review of any involuntary hold.  Neither Mr. Clifton nor his grandmother recall that they were informed of the long-term repercussions of an involuntary psychiatric hold, including and especially certification for intensive treatment pursuant to Welfare and Institutions Code section 5250.

21.     Mr. Clifton was not prescribed any continuing medication, nor was he required or even recommended to have any further psychiatric treatment, including therapy or counseling following his discharge from the hospital.

22.     As a result of his isolated mental health hospitalization in 2001, Mr. Clifton lost his private capacity firearm rights by operation of Welfare and Institutions Code 8103(g)(1)(i) and 18 U.S.C. § 922(g), which both prohibit an individual who has been involuntarily committed to a mental institution from being able to own, possess, use, or purchase a firearm or ammunition; however, pursuant to 18 U.S.C. § 925(a)(1), federal law includes an exception for state actors in their official capacity.

23.     The California Department of Justice ("CADOJ") maintains a statewide telecommunications system for the use of law enforcement agencies.  This system, called the California Law Enforcement Telecommunications System ("CLETS"), connects law enforcement and other public safety agencies to a number of databases that contain such data as a person's criminal history, criminal record, driving record and firearms eligibility.

24.     Records indicate that CADOJ received and processed a Welfare and Institutions Code section 5250 firearms restriction into CLETS under Mr. Clifton's name on July 2, 2001.

25.     Upon an appropriate CLETS search of Mr. Clifton, Defendant CADOJ will disclose a "firearms summary" indicating a "5250 prohibition" from Gateways Hospital and Mental Health Center, prohibited June 19, 2001 and received and entered on July 2, 2001.  Under "prohibiting expiration," CLETS indicates for Mr. Clifton "lifetime."  The relevant CLETS record for Mr. Clifton is attached hereto as Exhibit "A."

26.     The combination of losing his mother, an abusive home life and the misclassified hospitalization could have easily sent Mr. Clifton on a downward spiral into drugs and crime and gang activity that were prevalent in South Central Los Angeles through Mr. Clifton's adolescence and claimed several of his friends.

27.     However, Mr. Clifton graduated from high school and enlisted in the United States Marine Corps in 2005.  Among other assignments, he served in the infantry (completing three combat deployments), possessing and using a firearm without incident.  Mr. Clifton is informed and believes, and based thereon alleges, that the Marine Corps completed a background investigation of him that would have revealed the federal firearms restriction before accepting him into the service.  Mr. Clifton left active duty in 2013 with an Honorable Discharge as a Sergeant.

28.     In 2015, Mr. Clifton was hired by the Federal Bureau of Prisons as a Corrections Officer, a federal law enforcement officer.  As part of his duties, he was required to possess and be prepared to use a firearm.  He also held law enforcement credentials that authorized him to possess and carry a personal firearm. Mr. Clifton is informed and believes, and based thereon alleges, that the Federal Bureau of Prisons completed a background investigation of him that would have revealed the federal firearms restriction before offering him employment.  Mr. Clifton resigned from his employment with the Federal Bureau of Prisons in April 2019 in good standing.

29.     On April 8, 2019, the Fresno County Sheriff's Office hired Mr. Clifton as a Correctional Officer at the Fresno County Jail.  Although this is a non-sworn position in Fresno County, a correctional officer is still considered a public officer pursuant to Penal Code section 831.5 and must meet public officer status requirements set forth in federal, state and local

1  legislation.

2        30.    When Fresno County ran a CLETS search of Mr. Clifton while processing his

3  Correctional Officer application, CADOJ's results did not indicate a prohibition on his right to

4  possess and use firearms.

5        31.    Prior to being hired as a Correctional Officer, Mr. Clifton underwent and passed a

6  full psychological evaluation "to arming standard," that is, confirming he is mentally fit to possess

7  and use a firearm even though possession and/or use of a firearm is not a requirement of the

8  position.

9        32.    In 2020, Mr. Clifton submitted his application to the Fresno County Sheriff's

10  Office for a Deputy Sheriff I position on the encouragement of Sheriff's Office management.  This

11  time, when Fresno County ran the CLETS search, CADOJ reported the "5250" lifetime firearms

12  prohibition.

13        33.    As a result of the federal firearms restriction, the Sheriff's Office declined to

14  sponsor Mr. Clifton's entry into the Basic Academy under the California Commission on Peace

15  Officer Standards and Training ("POST Academy") and has represented that it will not consider

16  Mr. Clifton for a sworn Deputy Sheriff position.

17        34.    Mr. Clifton is informed and believes and based thereon alleges that he has not been

18  considered for peace officer positions with other local agencies, despite his military and federal

19  law enforcement credentials, on account of the lifetime federal firearms prohibition on his CADOJ

20  records.

21        35.    Neither Mr. Clifton nor his grandmother were aware, prior to 2020, that Mr.

22  Clifton's 2001 hospitalization for mental health treatment resulted in him being certified for

23  intensive treatment pursuant to Welfare and Institutions Code section 5250.

24        36.    Gateways Hospitals and Mental Health Center has represented to Mr. Clifton that it

25  no longer has records from his 2001 hospitalization because the records were destroyed after seven

26  years pursuant to the hospital's document retention policy.  See Exhibit "B" attached hereto.

27  ///

28  ///

MESSING ADAM &
JASMINE LLP
ATTORNEYS AT LAW

00095677-6

6

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, DECLARATORY AND INJUNCTIVE RELIEF

37.     By operation of law, Mr. Clifton's state firearm disability expired in July 2006 pursuant to Welfare and Institutions Code section 8103(g)(1)(i).  Under California state law, Mr. Clifton's right to possess firearms has been fully restored.

38.     On June 5, 2020, Mr. Clifton filed a petition in Fresno County Superior Court, case no. 20CRFP685534, seeking a determination that he would be likely to use firearms in a safe and lawful manner so as to have his Second Amendment rights restored under state law pursuant to Welfare & Institutions Code section 8103.  Mr. Clifton appeared for hearing on this matter on July 31, 2020 in Department 50, where he was told by the Honorable Brian Alvarez, judge presiding, that the Superior Court did not have jurisdiction over the matter because the state law firearm prohibition was no longer in effect.

39.     Mr. Clifton is a responsible, law-abiding American citizen, who has no history of violent behavior, or any other conduct that would suggest he would pose any more danger by possessing firearms than an average, law-abiding responsible citizen.

40.     Mr. Clifton is mentally fit and not a danger to himself or others.  Mr. Clifton will submit a full psychological evaluation evidencing his mental fitness to possess firearms and that he would not be likely to act in a manner dangerous to public safety.

41.     There is no proceeding that Mr. Clifton can bring administratively or in state court to expunge or extinguish his CLETS record with the CADOJ showing his Section 5250 certification and lifetime firearms restriction.

42.     Mr. Clifton has requested to CADOJ that his record be expunged or extinguished and CADOJ has refused.

43.     Under the federal Gun Control Act, an individual "who has been committed to a mental institution" may not possess a firearm. Section 922(g). Specifically: "It shall be unlawful for any person . . . who has been adjudicated as a mental defective or who has been committed to a mental institution . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." *Ibid*.

///

44.     Although 18 U.S.C. § 922(g) does not specify that it applies to juveniles and 18 U.S.C. § 922(x) addresses firearms disabilities specific to juveniles, the ATF's current policy is to declare juvenile involuntary commitments prohibiting.

45.     18 U.S.C. § 925(a) provides an exception to the firearms disability of Section 922(g)(4), where the individual is benefitting, in his/her official capacity, the U.S., state or local government:

> The provisions of this chapter, except for sections 922(d)(9) and 922(g)(9) and provisions relating to firearms subject to the prohibitions of section 922(p), shall not apply with respect to the transportation, shipment, receipt, possession, or importation of any firearm or ammunition imported for, sold or shipped to, or issued for the use of, the United States or any department or agency thereof or any State or any department, agency, or political subdivision thereof.

However, the Fresno COUNTY SHERIFF's Office refuses to apply the Section 925(a) exception to allow Mr. Clifton to possess and use firearms a sworn peace officer with his lifetime federal firearms restriction.

46.     The Gun Control Act provides a relief-from-disabilities program whereby individuals prohibited from possessing firearms may "appl[y] to the Attorney General for relief from the firearm restriction.  The Gun Control Act states that the Attorney General may grant this relief if, after reviewing the circumstances regarding the disability and the applicant's record and reputation, "it is established to his satisfaction . . . that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest."  See 18 U.S.C. § 925(c).[1]  Judicial review is available to "[a]ny person whose

---

[1] The full text of the statute provides:

(c) A person who is prohibited from possessing, shipping, transporting, or receiving firearms or ammunition may make application to the Attorney General for relief from the disabilities imposed by Federal laws with respect to the acquisition, receipt, transfer, shipment, transportation, or possession of firearms, and the Attorney General may grant such relief if it is established to his satisfaction that the circumstances regarding the disability, and the applicant's record and

MESSING ADAM & JASMINE LLP
ATTORNEYS AT LAW

application for relief from disabilities is denied by the Attorney General." *Ibid.* A United States district court "may in its discretion admit additional evidence where failure to do so would result in a miscarriage of justice." *Id.*

47. The Attorney General has delegated his authority to "[i]nvestigate, administer, and enforce the laws related to . . . firearms," including the relief-from-disabilities program of 18 U.S.C. § 925(c), to the director of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). 28 C.F.R. § 0.130(a)(1). ATF regulations prescribe the form and contents of an application for relief from disabilities. See 27 C.F.R. § 478.144.

48. Since 1992, however, Congress has eliminated funding for ATF to investigate or act upon applications for relief from federal firearms disabilities submitted by individuals. See Treasury, Postal Service, and General Government Appropriations Act, 1993, Pub. L. No. 102-393, 106 Stat. 1729, 1732; see Consolidated Appropriations Act, 2014, Pub. L. No. 113-No. 13-1876 *Tyler v. Hillsdale Cnty. Sheriff's Dep't, et al.* Page 4 76, 128 Stat. 5, 57; *United States v. Bean*, 537 U.S. 71, 75 n.3 (2002) (collecting appropriation riders from 1994–2002).

49. Thus, individuals seeking relief under section 925(c) are without recourse, even though federal law establishes a right to such relief. Finding a forum to hear applications in federal district court is of no avail, following *United States v. Bean* (2002) 537 U.S. 71 (holding that even though Congress defunded the relief from disabilities program, applications could not be addressed in federal court because administrative remedies had not been exhausted).

///

reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest. Any person whose application for relief from disabilities is denied by the Attorney General may file a petition with the United States district court for the district in which he resides for a judicial review of such denial. The court may in its discretion admit additional evidence where failure to do so would result in a miscarriage of justice. A licensed importer, licensed manufacturer, licensed dealer, or licensed collector conducting operations under this chapter, who makes application for relief from the disabilities incurred under this chapter, shall not be barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section. Whenever the Attorney General grants relief to any person pursuant to this section he shall promptly publish in the Federal Register notice of such action, together with the reasons therefor. 18 U.S.C.A. § 925 (West).

1        50.     In 2008 Congress authorized federal grants to states to assist them in determining

2  which individuals are eligible to purchase and possess firearms and to aid them in supplying

3  accurate information to federal databases. See NICS Improvement Amendments Act of 2007, Pub.

4  L. No. 110-180, § 103, 122 Stat. 2559, 2567 ("NIAA").  To be eligible for such grants, a state

5  must certify to the Attorney General that it has implemented a relief-from-disabilities program

6  under which an individual who "pursuant to state law" has been adjudicated mentally defective or

7  has been "committed to a mental institution" may apply "for relief from the disabilities imposed"

8  by 18 U.S.C. § 922(g)(4). §§ 103 & 105, 122 Stat. at 2568–69. Thus, if a state chooses to

9  implement a relief from disabilities program to restore federal firearm rights, citizens of those

10  states can avail themselves of that relief.

11        51.     Under the state-implemented relief-from-disabilities program, states "shall grant

12  the relief" if "the circumstances regarding the disabilities . . . and the person's record and

13  reputation, are such that the person will not be likely to act in a manner dangerous to public safety

14  and that the granting of the relief would not be contrary to the public interest." *Ibid*. These state

15  programs must permit an individual "whose application for the relief is denied to file a petition

16  with the State court of appropriate jurisdiction for a de novo judicial review of the denial."2 §

17  105(a)(3), 122 Stat. at 2570. Roughly half the states have created grant-eligible relief-from-

18  disabilities programs.

19        52.     To date, California, Mr. Clifton's state of residence, has not implemented a relief-

20  from-disabilities program. Therefore, Mr. Clifton and other California residents who are ineligible

21  to possess firearms under section 922(g)(4) have no recourse to appeal the lifelong federal firearm

22  ban.

23        53.     Therefore, it would be futile for Mr. Clifton to seek from the U.S. Attorney General

24  relief from disabilities, pursuant to 18 U.S.C. § 922(c) with respect to the federal firearms

25  prohibition.

26                                **FIRST CLAIM**

27           **(Second Amendment As-Applied Violation Against All Defendants)**

28        54.     Paragraphs 1-53 are incorporated herein.

55.     Defendants have, together and separately, violated Mr. Clifton's Second Amendment rights.

56.     Defendants contend that 18 U.S.C. § 922(g)(4) prohibits any individual who has ever been certified for intensive treatment under Welfare and Institutions Code section 5250 – without regard to the reason for the certification or the present circumstances of the individual – from purchasing, possessing and utilizing a firearm.

57.     Notwithstanding the NIAA, no state relief from the federal prohibition under 18 U.S.C. § 922(g)(4) exists in California due to California's failure to provide for a procedure for such relief.

58.     Not only can Mr. Clifton not avail himself of a forum to demonstrate current fitness to possess firearms, he is unable to challenge the original California Welfare and Institutions Code 5250 certification (and resulting firearm ban under the Federal Gun Control Act) even though, as a factual matter, Mr. Clifton disputes that he involuntarily sought treatment and, as well, Mr. Clifton was never involuntarily committed by any court of law.

59.     No court has determined that Mr. Clifton was both mentally ill and dangerous at the time of his alleged involuntary commitment.

60.     Mr. Clifton's facts about himself and background distinguish him from the typical person with a lifetime federal firearms ban pursuant to 18 U.S.C. § 922(g)(4) following an involuntary mental health commitment because Mr. Clifton received a single, isolated, short-term mental health treatment when he was a young juvenile, struggling to cope the death of his mother and his abusive step-grandfather.  He has had no issues since and he has possessed and used firearms safely as a United States Marine and as a law enforcement officer for the Federal Bureau of Prisons.  See *Binderup v. Att'y General United States of America*, 836 F.3d 336, 346 (3rd Cir. 2016); accord *Fortson v. Los Angeles City Attorney's Office*, 852 F.3d 1190, 1194 (9th Cir. 2017).

61.     California state law no longer prohibits Mr. Clifton from possessing a firearm.

62.     The federal laws and policies prohibiting Mr. Clifton from purchasing, possessing and utilizing a firearm, in his private capacity, and providing for no review of the prohibition because of a lack of federal funding and reliance upon a nonexistent state program constitutes an

1    over-broad infringement and an impermissible burden on Mr. Clifton's individual right to keep

2    and bear arms under the Second Amendment to the United States Constitution.

3            63.     This over-broad restriction has already been found to violate the Second

4    Amendment by the 6th Circuit Court of Appeals in *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 775

5    F.3d 308 (6th Cir. 2014) and as applied under nearly identical facts by the District Court for the

6    Middle District of Pennsylvania in *Keyes v. Lynch*, 195 F.Supp.3d 702 (M.D.Pa 2016).

7            64.     Applying intermediate scrutiny, as in *Mai v. United States* (9th Cir. 2020) 952 F.3d

8    1106, conflicts with the United States Supreme Court's conclusion in *District of Colombia v.*

9    *Heller*, 554 U.S. 570 (2008) that the scope of an individual's Second Amendment right is not

10   subject to judicial interest balancing.

11           65.     As a direct and proximate result of the above infringement and impermissible

12   burden on Mr. Clifton's Second Amendment rights, Mr. Clifton has suffered and continues to

13   suffer from an unlawful deprivation of his fundamental constitutional right to keep and bear arms.

14           66.     Mr. Clifton has incurred attorney's fees and costs as a direct result of prosecuting

15   the present court action.

16                                          **SECOND CLAIM**

17   **(Fifth Amendment Equal Protection and Due Process Violations Against All Defendants)**

18           67.     Paragraphs 1-66 are incorporated herein.

19           68.     Defendants have, together and separately, violated Mr. Clifton's rights under the

20   Fifth Amendment.

21           69.     As of April 2017, thirty-two states had implemented a relief-from-disabilities

22   program to restore federal firearm rights that apply the substantive standards of 34 U.S.C. §

23   40915.  California is not one of these states and continues, to date, to lack a relief-from-disabilities

24   program.

25           70.     That the citizens of 32 states in the United States currently have the benefit of being

26   able to petition under those states' relief-from-disabilities programs to restore their federal

27   firearms rights, applying 34 U.S.C. § 40915's substantive standards, and Mr. Clifton does not,

28   violates Mr. Clifton's right to equal protection of the laws guaranteed under the Due Process

MESSING ADAM &
JASMINE LLP
ATTORNEYS AT LAW

00095677-6

12

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, DECLARATORY AND INJUNCTIVE RELIEF

1   Clause of the Fifth Amendment to the United States Constitution.

2       71.     In violation of the Mr. Clifton's Fifth Amendment right to due process, Mr. Clifton

3   has been deprived of a process by which to petition to restore his federal firearms rights through

4   an NIAA relief-from-disabilities program applying 34 U.S.C. § 40915's substantive standards and

5   instead is burdened with a lifetime federal firearms restriction with no right of appeal.

6       72.     As a direct and proximate result of the above infringement and impermissible

7   burden on Mr. Clifton's Second Amendment rights, Mr. Clifton has suffered and continues to

8   suffer from an unlawful deprivation of his fundamental constitutional right to keep and bear arms,

9   which has also unlawfully infringed upon his seeking and obtaining a career as a peace officer.

10      73.     Mr. Clifton has incurred attorney's fees and costs as a direct result of prosecuting

11  the present court action.

## THIRD CLAIM

### (Fourteenth Amendment Equal Protection and Due Process Violations Against All

### Defendants)

15      74.     Paragraphs 1-74 are incorporated herein.

16      75.     Defendants have, together and separately, violated Mr. Clifton's rights under the

17  Fourteenth Amendment.

18      76.     That the citizens of 32 states in the United States currently have the benefit of being

19  able to petition under those states' relief-from-disabilities programs to restore their federal

20  firearms rights, applying 34 U.S.C. § 40915's substantive standards, and Mr. Clifton does not,

21  violates Mr. Clifton's right to equal protection of the laws guaranteed under the Due Process

22  Clause of the Fourteenth Amendment to the United States Constitution.

23      77.     In violation of the Mr. Clifton's Fourteenth Amendment right to due process, Mr.

24  Clifton has been deprived of a process by which to petition to restore his federal firearms rights

25  through an NIAA relief-from-disabilities program applying 34 U.S.C. § 40915's substantive

26  standards and instead is burdened with a lifetime federal firearms restriction with no right of

27  appeal.

28  ///

78.     As a direct and proximate result of the above infringement and impermissible burden on Mr. Clifton's Second Amendment rights, Mr. Clifton has suffered and continues to suffer from an unlawful deprivation of his fundamental constitutional right to keep and bear arms, which has also unlawfully infringed upon his seeking and obtaining a career as a peace officer.

79.     Mr. Clifton has incurred attorney's fees and costs as a direct result of prosecuting the present court action.

### V. PRAYER FOR RELIEF

WHEREFORE, Mr. Clifton respectfully requests that this Honorable Court enter judgment in his favor and against Defendants as follows:

1.     Declare that 18 U.S.C. § 922(g)(4), its derivative regulations, and all related laws, policies, and procedures violate Mr. Clifton's right to keep and bear arms as secured by the Second Amendment to the United States Constitution.

2.     Declare that 18 U.S.C.§922(g)(4), its derivative regulations, and all related laws, policies, and procedures, without an applicable NIAA relief-from-disabilities program in the State of California, violate Mr. Clifton's rights to equal protection and due process under the Due Process Clause of the Fifth Amendment to the United States Constitution.

3.     Declare that enforcement of 18 U.S.C.§922(g)(4), its derivative regulations, and all related laws, policies, and procedures, without an applicable NIAA relief-from-disabilities program in the State of California, violates Mr. Clifton's rights to equal protection and due process under the Fourteenth Amendment to the United States Constitution.

4.     Permanently enjoin the Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from enforcing against Mr. Clifton 18 U.S.C. § 922(g)(4) and all its derivative regulations, and all related laws, policies, and procedures that would impede or criminalize Mr. Clifton's exercise of his right to keep and bear arms—unless Mr. Clifton's is afforded an opportunity to demonstrate his fitness and thereby seek relief from 18 U.S.C. § 922(g)(4) and all related laws, derivative regulations, policies, and procedures.

5.     Award Mr. Clifton costs and attorney's fees and expenses to the extent permitted under 28 U.S.C. § 2412.

1      6.     Grant such other and further relief as the Court deems just and proper.

2  Dated:  January 20, 2021                    MESSING ADAM & JASMINE LLP

3

4                                      By

5                                          Lina Balciunas Cockrell
                                           Attorneys for Dominique Clifton
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

```
******************** FIREARMS PROHIBITION SUMMARY ********************

PHN/702068903        TYP/M
ENT/2                            NRI/1520298085
NAM/CLIFTON,DOMINIQUE            DOB/11-24-1987
SEX/M  RAC/B  HGT/    WGT/195  HAI/     EYE/     POB/
********************* OTHER NAMES/ID NUMBERS *********************
SOC/463679706
************************PROHIBITION REPORT************************
ORI/19V015 - GATEWAYS HOSPITAL AND MENTAL HEALTH CENTER   OCA/0283
DATE RECEIVED/07-02-2001
DATE PROCESSED/07-02-2001
DATE PROHIBITED/06-19-2001
PROHIBITION/5250 - 5250 WIC - DTSO OR GRAVELY DISABLED

          PROHIBITION EXPIRATION/LIFETIME

        *  *  *   END OF MESSAGE   *  *  *
```

Page 1 of 1

# EXHIBIT B

# GATEWAYS HOSPITAL
## AND MENTAL HEALTH CENTER

1891 Effie Street
Los Angeles, CA 90026
Phone: 323-644-2000
Fax:     323-666-1417

May 27, 2020

Dominique Clifton
558 5th Street
Sanger, CA 93657

RE: Clifton, Dominique        DOB: 11/24/1987    MR# 02-83-61

To: Mr. Clifton;

We are unable to comply with your request for information.  The record is unavailable; it was destroyed according to our records retention policy.  Dominique Clifton received services here at Gateways Hospital and Mental Health Center dates were:  06/12/2001 – 06/27/2001.

Please note that we maintain the medical records for approximately 7 years after the last date of service/discharge. After the statute of limitations for record retention expires, the medical records are destroyed. We regret the record is no longer available for your use.

No additional information is available.

Respectfully,

*Jennie RL Crooms*

Jennie RL Crooms, RHIA
HIM Director
Gateways Hospital & Mental Health Center
1891 Effie St.
Los Angeles, CA 90026
Phone (323)644-2000 Ext 207
E-mail:  jcrooms@gatewayshospital.org
Fax: 323.913.9067

DISCLAIMER:
This message and any included attachments are from Gateways Hospital and Mental Health Center and are intended only for the addressee. The information contained in this message is confidential and may constitute inside or non-public information under international, federal, or state securities laws. This communication also may be protected under the attorney-client privilege. Unauthorized forwarding, printing, copying, distribution, disclosing or use of such information is strictly prohibited and may be unlawful. If you are not the intended addressee, please promptly delete this message and notify the sender of the delivery error by e-mail or by calling (323) 644-2000, extension 207.  Thank you!

Affiliated with the Jewish Federation Council of Greater Los Angeles, Short Doyle Plan of the County of Los Angeles