1   Lina Balciunas Cockrell, Bar No. 238166
      lina@majlabor.com
2   **MESSING ADAM & JASMINE LLP**
    980 9th Street, Suite 380
3   Sacramento, California 95814
    Telephone:     916.446.5297
4   Facsimile:     916.448.5047

5   Attorneys for Plaintiff Dominique Clifton

6

7

8                  **UNITED STATES DISTRICT COURT**

9          **EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

10

11   DOMINIQUE CLIFTON,                          Case No. 1:21-cv-00089-DAD-EPG

12              Plaintiff,                        **PLAINTIFF'S OPPOSITION TO DEFENDANTS'
                                                  MOTION TO DISMISS**
13        v.
                                                 **[Fed. Rules Civ. Proc. § 12(b)(6)]**
14   UNITED STATES DEPARTMENT OF
     JUSTICE, JEFFREY A. ROSEN, as Acting         Judge:     Hon. Dale A. Drozd
15   Attorney General of the United States,       Date:      September 21, 2021
     UNITED STATES BUREAU OF ALCOHOL,             Time:      9:30 a.m.
16   TOBACCO, FIREARMS and EXPLOSIVES             Crtrm.:    5
     ("ATF"), REGINA LOMBARDO, as Acting
17   Director of the ATF, FEDERAL BUREAU of       The Hon. ERICA P. GROSJEAN
     INVESTIGATION ("FBI"), CHRISTOPHER
18   WRAY, as Director of the FBI,                Trial Date:            None set.

19              Defendants.

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................ 5

II.   BACKGROUND FACTS ........................................................................................... 6

III.  LEGAL STANDARD ................................................................................................ 9

IV.   KEY CASES RELEVANT TO THIS MATTER ..................................................... 10

  A.  The Presumption that a Lifetime Prohibition on Second Amendment Rights Might Be Lawful is Rebuttable ................................................................. 10

  B. California State Law Allows Involuntary Mental Health Detentions Without Judicial Involvement ................................................................................ 10

  C. Relevant Analogous Cases ................................................................................ 14

V.    ARGUMENT ........................................................................................................... 17

  A.  Mai Does Not Preclude Clifton's As-Applied Challenge Because His Section 5250 Certification was Not a "Commitment" within the Meaning of Section 922(g)(4) ......... 17

    1.  Clifton was Never "Adjudicated" Nor "Committed" Within the Meaning of Section 922(g)(4) ................................................................................................ 18

      (a)  Clifton's 2001 Mental Health Treatment Lacked "Robust Judicial Involvement", Or Any Judicial Involvement Whatsoever ........................................ 18

      (b)  Clifton's 5250 Certification Does Not Establish that He was Found to Be Both Mentally Ill and Dangerous ................................................................. 20

    2.  Clifton's Challenge Withstands Intermediate Scrutiny Because Section 922(g)(4) As Applied to Him Does Not Reasonably Fit the Government's Statutory Interests ..... 22

      (a)  An As-Applied Challenge Should Look Only at the Individual Facts Before the Court ................................................................................................... 22

      (b)  Even Applying Intermediate Scrutiny, Section 922(g)(4) is Unconstitutional As Applied to Clifton ........................................................................... 23

  B. The Due Process and Equal Protection Claims Raised by Clifton Should Receive a Hearing on Their Merits ............................................................................... 25

VI.   CONCLUSION ........................................................................................................ 26

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MESSING ADAM & JASMINE LLP
ATTORNEYS AT LAW

1

# TABLE OF AUTHORITIES

2

**Federal Cases**

*Atchison, Topeka & Santa Fe Ry. v. Buell*
  (1987) 480 U.S. 557 ............................................................................................ 9

*Ayotte v. Planned Parenthood of N. New England*
  (2006) 546 U.S. 320 .......................................................................................... 23

*Binderrup v. Attorney General*
  (3rd Cir. 2016) 836 F.3d 336............................................................................ 15

*City of Cleburne v. Cleburne Living Ctr.*
  (1985) 473 U.S. 432 .......................................................................................... 25

*Conley v. Gibson*
  (1957) 355 U.S. 41 .............................................................................................. 9

*District of Columbia v. Heller*
  (2008) 554 U.S. 570 .................................................................................... 10, 23

*Doe v. United States*
  (9th Cir. 2005) 419 F3d 1058............................................................................. 9

*Doe v. United States Dept. of Justice*
  (D.C.Cir.1985) 753 F.2d 1092 ......................................................................... 10

*Keyes v. Lynch*
  (M.D.Penn. 2016) 195 F.Supp.3d 702 ................................. 15, 16, 22, 23, 24

*Mai v. United States*
  (9th Cir. 2020) 952 F.3d 1106................................ 16, 18, 19, 20, 21, 22, 23, 24, 26

*Massey v. Banning Unified School Dist.*
  (CD CA 2003) 256 F.Supp.2d 1090.................................................................. 10

*Orion Tire Corp. v. Goodyear Tire & Rubber Co., Inc.*
  (9th Cir. 2001) 268 F3d 1133 ............................................................................ 9

*Pegram v. Herdrich*
  (2000) 530 US 211 .............................................................................................. 9

*Redford v. U.S. Dep't of Treasury, Bureau of Alcohol, Tobacco and Firearms*
  (10th Cir. 1982) 691 F.2d 471........................................................................... 13

*Stokes v. United States Dep't of Just.*
  (N.D. Cal. 2021) 2021 WL 3271275............................................... 17, 19, 21

*Swierkiewicz v. Sorema N.A.*
  (2002) 534 U.S. 506 ............................................................................................ 9

*Tyler v. Hillsdale County Sheriff's Department*
  (6th Cir. 2016) 837 F.3d 678.................................................................. 10, 14, 24

*Tyler v. Hillsdale Cty. Sheriff's Dep't*
  (6th Cir. 2014) 775 F.3d 308 ........................................................................... 14

*United States v. Bartley*
  (9th Cir. 2021) 2021 WL 3700341 ............................................................ 18, 19

*United States v. Barton*
  (3rd. Cir. 2011) 633 F.3d................................................................................ 15, 22

*United States v. Chovan*
  (9th Cir. 2013) 735 F.3d 1127 ......................................................................... 22

*United States v. Marzzarella*
  (3d Cir. 2010) 614 F.3d 85 .............................................................................. 15

*United States v. Rehlander*
  (1st Cir. 2012) 666 F.3d 45 ........................................................... 10, 19, 20

*United States v. Williams*
  (7th Cir. 2010) 616 F.3d 685............................................................................ 10

**State Cases**

*Bragg v. Aldez*
  (2003) 111 Cal.App.4th 421 ............................................................................ 13

*People v. Triplett*

MESSING ADAM &
JASMINE LLP
ATTORNEYS AT LAW

00111401-3

3

Case No. 1:21-cv-00089-DAD-EPG

Opposition to Motion to Dismiss

(1983) 144 Cal. App. 3d 283 ................................................................................................ 11
*Thorn v. Superior Court*
(1970) 1 Cal.3d 666 ........................................................................................................... 12

**Federal Statutes**
18 U.S.C. § 922 .................................................................................................................... 13
18 U.S.C. § 925 ...................................................................................................................... 8
27 C.F.R. § 478.11 .............................................................................................................. 13
27 C.F.R. 478.11 ................................................................................................................. 19

**State Statutes**
Cal. Pen. Code § 26 ............................................................................................................ 23
Gov. Code 27706 ................................................................................................................. 12
Welf. & Inst. Code § 5250 ............................................................................................. 12, 13
Welf. & Inst. Code § 5253 .................................................................................................. 12
Welf. & Inst. Code § 5254.1 ............................................................................................... 12
Welf. & Inst. Code § 5256 .................................................................................................. 12
Welf. & Inst. Code § 5256.1 ............................................................................................... 12
Welf. & Inst. Code § 5256.4 ............................................................................................... 12
Welf. & Inst. Code § 5256.6 ............................................................................................... 12
Welf. & Inst. Code § 5256.7 ............................................................................................... 13
Welf. & Inst. Code § 5275 .................................................................................................. 12
Welf. & Inst. Code § 5585.25 ........................................................................................ 11, 21
Welf. & Inst. Code 5585.50 ........................................................................................... 11, 21

**Constitutional Provisions**
U.S. Const. Amend. II ......................................................................................................... 10

MESSING ADAM &
JASMINE LLP
ATTORNEYS AT LAW

00111401-3

4

Case No. 1:21-cv-00089-DAD-EPG

Opposition to Motion to Dismiss

## I.      INTRODUCTION

This case presents an as-applied challenge to the constitutionality of the lifetime firearms prohibition imposed by 18 U.S.C. § 922(g)(4) upon any person "who has been adjudicated as a mental defective or who has been committed to a mental institution."  Except that Plaintiff Dominique Clifton was a child of only 13 years old in 2001 when he made an expression of frustration – not a threat to harm others or himself – at school regarding his abusive home life. The school called a county psychiatric team whose express purpose was involuntary mental health detentions.  After 15 days of treatment with no judicial review or intervention, Clifton was released with no medication or continuing course of treatment … back to his abusive home environment.   But over 20 years following the hospitalization that he and his legal guardian believed was voluntary, Clifton has thrived as a law-abiding citizen.

This case does not present the issue of whether Clifton currently poses a risk of harm to himself or others if he possesses and/or uses a firearm.  That question has been answered resoundingly and repeatedly in his favor through eight years of military service, including combat in three overseas deployments and four years as a federal peace officer, where he was also authorized to possess a personal firearm.  As well, in his current non-sworn position as a Correctional Officer for the Fresno County Sheriff's Department, Clifton passed a psychological evaluation to an "arming standard" before he could be hired.

But because Clifton lives in California and because California does not have a relief from disabilities program that satisfies the federal standard, Clifton has a lifetime firearms prohibition. This morass of illogical contradictions violates Clifton's constitutional right to bear arms, equal protection of the laws and due process.

The certification for intensive treatment in 2001 pursuant to California Welfare and Institutions Code section 5250 did not and does not not bring Clifton under the firearms prohibition of Section 922(g)(4) because it did not constitute a "commitment" within the meaning of the statute.  Moreover, even applying intermediate scrutiny under recent Ninth Circuit precedent, the lifetime firearms prohibition as applied to Clifton does not reasonably fit the government's stated statutory interests.

1   Consequently, Clifton has stated valid claims in his Complaint, he should be allowed to

2   proceed with his case and the Motion filed by Defendants United States Department of Justice et

3   al (collectively, "Defendants") should be denied in its entirety.  In the alternative, Clifton

4   respectfully requests leave to amend his Complaint.

5   **II.      BACKGROUND FACTS**

6   Dominique Clifton grew up in Los Angeles, California and attended what was then called

7   Mt. Vernon Middle School (currently named Johnnie Cochran Jr. Middle School).  Complaint, ¶

8   12.  He was actively engaged in academics and sports, a typical early teenager.  Complaint, ¶ 13.

9   Clifton was raised by his grandmother after his mother passed away.  Complaint, ¶ 14.  His

10   grandmother later married a man who was physically and emotionally abusive toward her and

11   Clifton.  *Ibid*.

12   At an after-school program when he was just 13 years old, in the eighth grade, Clifton

13   made statements about what he would like to do (not what he was able to do, not what he was

14   going to do) to protect himself and his grandmother from the trauma regularly inflicted by his

15   step-grandfather.  Complaint, ¶¶ 15-17.

16   The school responded by calling a Los Angeles County Psychiatric Emergency Team

17   ("PET").  Complaint, ¶ 18.  The PET team is a mobile response unit through the County

18   Department of Mental Health that provides Welfare and Institutions Code section 5150 (adult) and

19   5585 (juvenile) evaluations.  *Ibid*.  This was an overly aggressive response to a child in trauma.

20   The mental health clinicians on the PET team involuntarily committed Clifton to the Gateways

21   Hospital and Mental Health Center from June 12, 2001 to June 27, 2001, presumably starting with

22   a 72-hour hold pursuant to Welfare and Institutions Code section 5150.  Complaint, ¶¶ 18-19.  The

23   Hospital then certified Clifton for intensive treatment pursuant to Welfare and Institutions Code

24   section 5250.

25   Neither Clifton nor his grandmother were advised that the hospitalization was deemed

26   involuntary, nor were they given the right to appeal or challenge the commitment.  Complaint, ¶

27   20.  No one advised Clifton or his grandmother of the long-term repercussions of an involuntary

28   psychiatric hold pursuant to Welfare and Institutions Code section 5250.  *Ibid*.

Clifton was not prescribed any continuing medication, nor was he required or even recommended to have any further psychiatric treatment following his discharge from the hospital, including therapy or counseling.  Complaint, ¶ 21.

The California State Department of Justice ("CADOJ") received and processed a Welfare and Institutions Code section 5250 lifetime firearms restriction on July 2, 2001.  Complaint, ¶ 24. This prohibition is reflected through any law enforcement database search of Clifton's biographical data.  Complaint, ¶¶ 23, 25.

Rather than let the school incident, his hospitalization or his circumstances at home define him, Clifton graduated from high school and enlisted in the United States Marine Corps in 2005. Complaint, ¶¶ 26-27.  He served in the infantry, completing three combat deployments, where he possessed and used firearms without incident.  Clifton was honorably discharged at the rank of Sergeant in 2013. Complaint, ¶ 27.

In 2015, Clifton was hired by the Federal Bureau of Prisons as a Corrections Officer. Complaint, ¶ 28.  As part of his duties, he was required to possess and be prepared to use a firearm.  *Ibid*.  His position as a federal law enforcement officer gave him gave him credentials authorizing him to possess and carry a personal firearm.  *Ibid*.  Clifton worked for the Federal Bureau of Prisons until he resigned in good standing in April 2019.  *Ibid*.

On April 8, 2019, Clifton became employed by the Fresno County Sheriff's Office as a Correctional Officer, a non-sworn position, at the Fresno County Jail.   Complaint ¶ 29.  The County ran a search on Clifton in the CADOJ's California Law Enforcement Telecommunications System ("CLETS") while processing Clifton's Correctional Officer application and the results did not indicate any prohibition on his right to possess and use firearms.  Complaint ¶¶ 23, 30.

In 2020, Clifton submitted his application to Fresno County for a Deputy Sheriff I position, to be a sworn peace officer.  Complaint ¶ 32.  This time, when the County ran the CLETS search, CADOJ reported the "5250" lifetime firearms prohibition.  Complaint, ¶¶ 25, Exh. A, 32.  As a result of the federal firearms prohibition, the County will not consider Clifton for a Deputy Sheriff position.  Complaint, ¶ 33.  Both Clifton and his grandmother had no knowledge of the federal firearms prohibition until 2020 when he applied for the Deputy Sheriff position.  Complaint, ¶ 35.

For the Marines, the Federal Bureau of Prisons and the Fresno County Correctional Officer application process, Clifton had to successfully pass a background investigation and psychological evaluation, which he did.  Complaint, ¶¶ 27, 28, 30, 31.

Gateways Hospitals and Mental Health Center no longer has records from Clifton's 2001 hospitalization pursuant to its document retention policy.  Complaint, ¶ 36.  A state firearms prohibition from the 5250 certification pursuant to Welfare and Institutions Code section 8103 expired in 2006.  Complaint, ¶ 38.

In the two decades that have followed Clifton's brief hospitalization, he has not suffered any further mental issues of any kind.  He has exhibited no violent behavior or any other conduct that would suggest he would pose any more danger by possessing firearms than an average, law-abiding responsible citizen. Complaint, ¶¶ 39-40.   The evidence will show that Clifton's only negative interaction with law enforcement (outside of a single speeding ticket in 2017) is in November 2011, when he was arrested for driving under the influence of alcohol.  He entered into a plea agreement, paid a fine and honored the brief suspension of his driver's license.  More tellingly, the incident prompted Clifton to abstain from alcohol use.

The evidence will further show that Clifton is an exemplary employee at the Fresno County Jail, working practically around the clock to help the County maintain adequate staffing through the COVID-19 crisis.  Clifton has a stable home life.  A recent full psychiatric examination that will be presented to the Court and to Defendants confirmed that Clifton is psychologically fit and poses no danger to public safety or to himself.

The evidence will further show that the Fresno County Sheriff's Office fully supports Clifton's endeavor to become a sworn peace officer and that the County has been made aware of the federal "official use exemption" that allows a person with a firearms prohibition pursuant to 18 U.S.C. § 922 (save for a couple exceptions not applicable here) to transport, possess and/or use any firearm "issued for the use of, the United States or any department or agency thereof or any State or any department, agency, or political subdivision thereof."  See 18 U.S.C. § 925(a).  So Clifton technically is legally eligible to be sworn as a peace officer under both California state law

1   and federal law.  However, the County has rejected Clifton's application for a Deputy Sheriff

2   position expressly due to the Section 922(g)(4) firearms prohibition.

3       Additionally, given his work with inmates, both at the federal and county level, Clifton

4   desires a personal firearm for the defense of his home, should it become necessary.

5   **III.    LEGAL STANDARD**

6       In evaluating a motion to dismiss under Rule 12(b)(6), the court "must construe the

7   complaint in the light most favorable to the plaintiff, taking all [ ] allegations as true and drawing

8   all reasonable inferences from the complaint in [his] favor. [Citation.]  Moreover, 'a complaint

9   should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff

10  can prove no set of facts in support of his claim which would entitle him to relief.'" *Doe v. United*

11  *States* (9th Cir. 2005) 419 F3d 1058, 1062 quoting *Conley v. Gibson* (1957) 355 U.S. 41, 45–46,

12  78.  The U.S. Supreme Court has held that complaints need only "give the defendant fair notice of

13  what the plaintiff's claim is and the grounds upon which it rests."  *Swierkiewicz v. Sorema N.A.*,

14  534 U.S. 506, 512 (2002, accord *Atchison, Topeka & Santa Fe Ry. v. Buell* (1987) 480 U.S. 557,

15  568 fn. 15 (under Federal Rule 8, claimant has "no duty to set out all of the relevant facts in his

16  complaint").

17      Clifton not only provided the factual basis for his claims, but he also cited case law

18  analogous to his situation and instructive to put Defendants on notice.

19      Moreover, a plaintiff's briefing may always be used "to clarify allegations in [his]

20  complaint whose meaning is unclear."  *Pegram v. Herdrich* (2000) 530 US 211, 230, 120 S.Ct.

21  2143, 2155, fn. 10.  "New" facts (if any) in a plaintiff's opposition papers should be considered by

22  the court in deciding whether to grant leave to amend or to dismiss *with or without prejudice*.

23  *Orion Tire Corp. v. Goodyear Tire & Rubber Co., Inc.* (9th Cir. 2001) 268 F3d 1133, 1137.

24      Finally, the court may not grant a Rule 12(b)(6) motion merely because the plaintiff

25  requests a remedy to which he is not entitled. "'[I]t need not appear that the plaintiff can obtain the

26  *specific* relief demanded as long as the court can ascertain from the face of the complaint that

27  *some* relief can be granted.'"  *Massey v. Banning Unified School Dist.* (CD CA 2003) 256

28

1  F.Supp.2d 1090, 1092 quoting *Doe v. United States Dept. of Justice* (D.C.Cir.1985) 753 F.2d

2  1092, 1104 (emphasis in the original).

3  As set forth below, Clifton has properly stated claims upon which relief may be granted

4  and Defendants' Motion should be dismissed.

5  **IV.     KEY CASES RELEVANT TO THIS MATTER**

6
7  **A.  The Presumption that a Lifetime Prohibition on Second Amendment Rights
        Might Be Lawful is Rebuttable**

8  The Second Amendment guarantees "the right of the people to keep and bear Arms,"

9  which the U.S. Supreme Court recognized its core right being "the right of law-abiding,

10 responsible citizens to use arms in defense of hearth and home."  U.S. Const. Amend. II; *District*

11 *of Columbia v. Heller* (2008) 554 U.S. 570, 577.  The Supreme Court went on to state that this

12 core right is not unlimited, with "longstanding prohibitions on the possession of firearms by felons

13 and the mentally ill" being "<u>presumptively</u> lawful."  *Id.* at 626-627, fn. 26 and 635 (emphasis

14 added).

15 A presumption implies "that there must exist the possibility that the ban could be

16 unconstitutional in the face of an as-applied challenge."  *United States v. Williams* (7th Cir. 2010)

17 616 F.3d 685, 692.  Moreover, the term "mentally ill" does not appear in the language of Section

18 922(g)(4).  Accord *Tyler v. Hillsdale County Sheriff's Department* (6th Cir. 2016) 837 F.3d 678,

19 687.  Instead, the statute references "prior judicial adjudications - incompetency and involuntary

20 commitment - as proxies for mental illness."  *Ibid.* citing *United States v. Rehlander* (1st Cir.

21 2012) 666 F.3d 45, 50 ("[S]ection 922(g)(4) does not bar firearms possession who are or were

22 mentally ill and dangerous, but (pertinently) only for any person 'who has been adjudicated as a

23 mental defective' or 'has been committed to a mental institution'").

24
25 **B.  California State Law Allows Involuntary Mental Health Detentions Without
        Judicial Involvement**

26 Clifton generally acknowledges the legal background set forth in Defendants' Motion

27 relating to the federal prohibition against the possession of firearms who have been "adjudicated

28 as a mental defective" or "committed to a mental institution" by a state and the lack of current

1   potential avenues for relief from this prohibition in the State of California.  But a summary of the

2   law applicable earlier in Clifton's saga is relevant and instructive.

3          California Welfare and Institutions Code 5150 allows an <u>adult</u> who, as a result of mental

4   illness, presents a danger to themselves or others, or who is gravely disabled by his mental illness,

5   to be involuntarily detained for 72 hours for evaluation in a psychiatric facility.  Welfare and

6   Institutions Code section 5585.50 similarly allows a <u>minor</u> to be subject to a 72-hour involuntary

7   psychiatric hold.  The facility must make every effort to notify the minor's parent or legal

8   guardian as soon as possible after the detention.  Welf. & Inst. Code 5585.50(a).

9          Section 5585.50(b) requires a written application showing probable cause to take a minor

10  into custody and placed in a county-designated facility.  The standard of probable cause for a

11  section 5150 detention is similar to probable cause for a warrantless arrest under the California

12  Penal Code.  *People v. Triplett* (1983) 144 Cal. App. 3d 283, 287.

> To constitute probable cause to detain a person pursuant to section
> 5150, a state of facts must be known to the peace officer (or other
> authorized person) that would lead a person of ordinary care and
> prudence to believe, or to entertain a strong suspicion, that the
> person detained is mentally disordered and is a danger to himself or
> herself or is gravely disabled. In justifying the particular intrusion,
> the officer must be able to point to specific and articulable facts
> which, taken together with rational inferences from those facts,
> reasonably warrant his or her belief or suspicion.

18  *Id*. at 287-88.  Additionally, in the Section 5585.50(b) written application, there also must be

19  probable cause to believe that authorization for voluntary treatment (by the minor's parent or legal

20  guardian) is not available.

21         A "gravely disabled minor" is a minor "who, as a result of a mental disorder, is unable to

22  use the elements of life that are essential to health, safety, and development, including food,

23  clothing, and shelter, even though provided to the minor by others.  Intellectual disability,

24  epilepsy, or other developmental disabilities, alcoholism, other drug abuse, or repeated antisocial

25  behavior do not, by themselves, constitute a mental disorder."  Welf. & Inst. Code § 5585.25.

26         Evaluation and treatment that goes beyond the initial 72 hours falls under the Lanterman

27  Petris Short ("LPS") Act (Welf. & Inst. Code §§ 5000 et seq.), even for minors.  At the end of the

28  72-hour period, a patient who refuses further voluntary hospitalization may be certified for an

1   additional 14-day period of intensive treatment. Welf. & Inst. Code § 5250.  Copies of the

2   certification notice must be personally delivered to the patient certified or to the patient's attorney

3   or advocate.  Welf. & Inst. Code § 5253.

4          The person delivering the notice of certification to the patient must inform the patient of

5   the right to counsel, including court-appointed counsel, and of the right to judicial review by

6   habeas corpus after the patient has asked to be released.  Welf. & Inst. Code §§ 5254.1, 5275; see

7   *Thorn v. Superior Court* (1970) 1 Cal.3d 666.  The public defender is required to represent a

8   patient who is financially unable to employ counsel, on request as well as by court order.  Gov.

9   Code 27706(d).

10          There is an automatic certification review proceeding for patients certified for intensive

11   treatment. These patients retain the right to seek judicial review by habeas corpus in place of the

12   review proceeding.  Welf. & Inst. Code § 5275.  But if the patient does not seek habeas corpus

13   relief, the review proceeding must be held within four days of the initial detention.  Welf. & Inst.

14   Code § 5256.

15          The certification review hearing is conducted by a court-appointed commissioner or a

16   referee, or by a certification review hearing officer and takes place at the psychiatric facility.

17   Welf. & Inst. Code § 5256.1.  The patient certified is entitled to be represented by an attorney or

18   other advocate, to present evidence, to question witnesses, and to make reasonable requests for the

19   attendance of facility employees with knowledge of the certification.  Welf. & Inst. Code §

20   5256.4(a).  If the evidence establishes probable cause that the patient certified is, as a result of

21   mental disorder or impairment by chronic alcoholism, a danger to himself or herself or to others,

22   or is gravely disabled, the patient may be detained beyond the initial 72-hour detention period

23   pursuant to Welfare and Institutions Code section 5250 or 5270.15.  Welf. & Inst. Code § 5256.6.

24          The patient certified must be given oral notification of the decision at the conclusion of the

25   hearing.  His or her attorney or advocate and the director of the facility where the person is being

26   treated must be given written notification of the decision, including the reasons for it and the

27   evidence relied upon; the attorney or advocate must then inform the patient certified of the right to

28   request release and to have a hearing before the superior court as provided in Welfare and

1    Institutions Code sections 5375 et seq.  A copy of the decision must be submitted to the state

2    superior court.  Welf. & Inst. Code § 5256.7.

3         Upon discharge from the psychiatric facility or before, the facility is required by Welfare

4    and Institutions Code section 8103(g)(3) to inform the patient that when a person is certified for

5    intensive treatment pursuant to Welfare and Institutions Code section 5250, the individual may not

6    own, possess, control, receive or purchase firearms for five years after release from the facility.  18

7    U.S.C. § 922(g)(4) prohibits ownership or possession of a firearm by someone "who has been

8    adjudicated as a mental defective or who has been committed to a mental institution."   This

9    restriction has been interpreted to be indefinite, or a lifetime prohibition.  *Redford v. U.S. Dep't of*

10   *Treasury, Bureau of Alcohol, Tobacco and Firearms* (10th Cir. 1982) 691 F.2d 471.  There is no

11   requirement in the LPS that the patient be given notice of the lifetime federal ban.

12        Under the federal regulations, the term "adjudicated as a mental defective" requires a

13   "determination by a court, board, commission or other lawful authority that a person, as a result of

14   marked subnormal intelligence, or mental illness, incompetency, condition, or disease; [¶] (1) Is a

15   danger to himself or to others; or (2) Lacks the mental capacity to contract or manage his own

16   affairs."  27 C.F.R. § 478.11.

17        "[C]ommitted to a mental institution" means a "formal commitment of a person to a

18   mental institution by a court, board, commission, or other lawful authority.  The term includes a

19   commitment to a mental institution involuntarily."  27 C.F.R. § 478.11.  By its terms, detention

20   under Welfare and Institutions Code section 5250 is involuntary.  Welf. & Inst. Code § 5250(c)

21   ("The person has been advised of the need for, but has not been willing or able to accept, treatment

22   on a voluntary basis").  A Section 5250 certification is also, by its own terms, for intensive

23   treatment of a mental illness.  *Bragg v. Aldez* (2003) 111 Cal.App.4th 421, 429-30.

24        The term "committed to a mental institution" in the federal regulation "does not include a

25   person in a mental institution for observation or a voluntary admission to a mental institution.  27

26   C.F.R. § 478.11.

27

28

### C.  Relevant Analogous Cases

Clifton wishes to highlight four critically relevant and instructive cases for the Court's consideration:

In *Tyler, supra*, the plaintiff, had been hospitalized for mental health treatment after his wife of 23 years ran away with another man, depleted plaintiff's finances and then served him with divorce papers.  837 F.3d at 683.  A court committed plaintiff to a mental health facility, where he stayed for 2-4 weeks, but declined prescription medication (without challenge) and received no follow-up therapy after being discharged.  *Ibid*.  He went on to live a responsible life, free of criminal conduct, substance abuse, or  further mental health issues.  *Id*. at 683-684. Twenty-six years later, plaintiff attempted to purchase a handgun and was denied as prohibited pursuant to Section 922(g)(4).  *Id*. at 684.  He filed a federal complaint, alleging Section 922(g)(4) was unconstitutional as applied to him, which was dismissed for failure to state a claim pursuant to Federal Rule 12(b)(6).  *Ibid*.  The Sixth Circuit reversed and remanded (775 F.3d 308), finding strict scrutiny to be the appropriate framework, among other reasons because intermediate scrutiny review was similar to the interest-balancing approach rejected by the majority in *Heller*. 775 F.3d at 318.

The Sixth Circuit granted rehearing en banc and vacated the opinion.  837 F.3d 678.  The court rejected strict scrutiny because it would "invert Heller's presumption that prohibitions on the mentally ill are lawful."  *Id*. at 692.  Because the law "burden[ed] only a narrow class of individuals who [were] not at the core of the Second Amendment[,]" it did not strike at the heart of Second Amendment protection, so strict scrutiny would not apply.  *Id*.  Instead, intermediate scrutiny was appropriate.

The Sixth Circuit concluded that the plaintiff had a viable claim under the Second Amendment and remanded to the district court for the application of intermediate scrutiny.  *Ibid*. "As we see it, the government may justify § 922(g)(4) in one of two ways: (1) with additional evidence explaining the necessity of § 922(g)(4)'s lifetime ban or (2) with evidence showing that § 922(g)(4) is constitutional as applied to Tyler because he would be a risk to himself or others were he allowed to possess a firearm."  *Ibid*.

In *Keyes v. Lynch* (M.D.Penn. 2016) 195 F.Supp.3d 702, the District Court granted summary judgment, finding that Section 922(g)(4) was unconstitutional as applied to a plaintiff who was involuntarily committed as a juvenile when he was 15 years old after making a suicide pact with an older girl, following his parents' divorce.  195 F.Supp.3d at 707.  His hospitalization lasted three days.  *Ibid*.  He enlisted in the U.S. Army when he was 17 and served for four years, during which time he "was trained to use and did use various kinds of firearms, including fully automatic rifles, machine guns, explosives and grenade launchers."  *Ibid*.

The plaintiff went on to become a state correctional officer, where he "actively possesses and uses a firearm in his official capacity."  *Id*. at 708.  The plaintiff obtained an order from the state court relieving him of his state firearm disability, but the Section 922(g)(4) prohibition remained.  *Ibid*.

The Third Circuit had, at the time, used a means-end framework applying intermediate scrutiny to a Second Amendment challenge to a statute making it unlawful to possess a handgun with an obliterated serial number in *United States v. Marzzarella* (3d Cir. 2010) 614 F.3d 85.  *Keyes, supra* 195 F.Supp.3d at 715.  But the Keyes court noted that a subsequent Third Circuit case, *United States v. Barton* (3rd. Cir. 2011) 633 F.3d 168,[1] used a different framework for a Second Amendment as-applied challenge.  *Id*. at 716.  Under the *Barton* framework, the challenger simply needed to "'present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections.  For instance, a felon convicted of a minor, non-violent crime might show that he is no more dangerous than a typical law-abiding citizen.  Similarly, a court might find that a felon whose crime of conviction is decades-old poses no continuing threat to society.'"  *Keyes, supra*, 195 F.Supp.3d at 716 quoting *Barton, supra*, 633 F.3d at 174.

---

[1] The holding in *Barton* would be overruled by *Binderrup v. Attorney General* (3rd Cir. 2016) 836 F.3d 336 in that the *Binderrup* panel disagreed that the passage of time or evidence of rehabilitation could restore the Second Amendment rights of people who have committed various crimes (not an issue here).  But *Binderrup* upheld the *Barton* framework for an as-applied constitutional challenge, as noted by the *Keyes* Court. 195 F.Supp.3d at 716.

The *Keyes* court reconciled the seeming conflict between the *Marzzarella* framework and the *Barton* framework by concluding that "Marzzarella [means-end scrutiny] seems to be a more appropriate framework for reviewing facial challenges under the Second Amendment, whereas Barton clearly and specifically concerns as-applied challenges. *Keyes, supra*, 195 F.Supp.3d at 717. The *Keyes* court found the plaintiff satisfied his burden challenging Section 922(g)(4) as applied to him, reasoning that, given the plaintiff's history of safely possessing and using firearms in his official capacity in the military and as a correctional officer, if plaintiff "were not to succeed on his as-applied challenge, we cannot imagine that there exists any person who could." *Id*. at 722.

In *Mai v. United States* (9th Cir. 2020) 952 F.3d 1106, the Washington state court committed plaintiff "involuntarily for mental health treatment after he threatened himself and others," concluding plaintiff "was both mentally ill and dangerous." *Id*. at 1110 (emphasis in the original). The *Mai* plaintiff's hospitalization lasted more than nine months, running into his 18th birthday. *Ibid*. The plaintiff argued Section 922(g)(4) was unconstitutional as applied to him because his single, involuntary commitment, starting when he was technically still a minor at 17 some 20 years ago, did not establish he, a gainfully employed, educated, married man with no subsequent mental health issues, is currently dangerous or mentally unfit to own a firearm. *Ibid*. The Ninth Circuit used a means-end framework applying intermediate scrutiny to conclude that Section 922(g)(4)'s firearms prohibition "on those who have been involuntarily committed to a mental institution is a reasonable fit for the important goal of reducing gun violence." *Id*. at 1119. The Court emphasized that it was "assessing congressional judgment about a category of persons, not about Plaintiff himself," but found the *Mai* plaintiff fit in that category because he had been "committed to a mental institution" within the meaning of Section 922(g)(4), given the Washington state court ruling he was both mentally ill and dangerous. *Id*. at 1121.

Indeed, Defendants rely almost entirely on *Mai* in arguing that Clifton cannot maintain a valid as-applied challenge under the Second Amendment to Section 922(g)(4)'s firearms prohibition. But the business day before Defendants filed their Motion, the District Court in the

MESSING ADAM &
JASMINE LLP
ATTORNEYS AT LAW

00111401-3

16

Case No. 1:21-cv-00089-DAD-EPG

Opposition to Motion to Dismiss

1   Northern District of California issued an order granting an as-applied challenge without even

2   having to get to the framework analysis.

3          In *Stokes v. United States Dep't of Just*. (N.D. Cal. 2021) 2021 WL 3271275, plaintiff was

4   an 18-year old high school senior when he went on a substance abuse binge over several days,

5   prompting his friends and foster family to take him to a hospital for help. *Id*. at *1.  The hospital

6   transferred him to a psychiatric facility where he was ultimately certified for intensive treatment

7   pursuant to Welfare and Institutions Code section 5250.  *Ibid*.  However, the *Stokes* plaintiff

8   testified that he wanted the treatment and went to the facility voluntarily.  *Ibid*.  He underwent

9   outpatient treatment for a few months and had no other issues for two decades.  *Ibid*.  He was

10  barred from inheriting family heirloom firearms on the basis of Section 922(g)(4)'s prohibition

11  and, being a California resident, had no avenue for relief.  *Id*. at *2.  There were no records from

12  the psychiatric facility but also nothing to indicate that a judge ever reviewed the *Stokes* plaintiff's

13  case or committed him.  *Ibid*.

14         The Northern District court denied a Motion to Dismiss and ultimately granted summary

15  judgment in favor of the *Stokes* plaintiff, finding that the *Mai* decision was not an obstacle, as

16  described below, because the lack of court process for the plaintiff's 5250 certification meant that

17  he was never adjudicated to be both mentally ill and dangerous or "committed" to a mental

18  institution under Section 922(g)(4).  *Id*. at *9.  The *Stokes* court noted that surviving intermediate

19  scrutiny under *Mai* requires "robust judicial involvement," which was lacking for the *Stokes*

20  plaintiff.

21         Clifton urges this Court to track his allegations with the *Stokes* analysis as set forth below.

22  **V.     ARGUMENT**

23         **A.  Mai Does Not Preclude Clifton's As-Applied Challenge Because His Section 5250**
24             **Certification was Not a "Commitment" within the Meaning of Section 922(g)(4)**

25         Clifton alleges in his Complaint that 18 U.S.C. 922(g)(4) as applied to him violates his

26  Second Amendment rights based on the overbreadth of the statute, no avenue for relief, its

27  continued application without regard to Clifton's present circumstances and because no court has

28  determined that Clifton was both mentally ill and dangerous at the time of his alleged involuntary

1  commitment.  Complaint, 56-59.  Defendants argue that Clifton has failed to state a claim upon

2  which relief may be granted based on the Ninth Circuit's holding in *Mai*.

3       However, *Mai* does not foreclose Clifton's claim because there was no judicial

4  involvement in Clifton's hospitalization so there was no "commitment" within the meaning of

5  Section 922(g)(4); Clifton was never found to be both mentally ill and dangerous; and because

6  Section 5250 certifications could be based on being unable to accept treatment voluntarily, rather

7  than being unwilling to accept treatment voluntarily.

### 1. Clifton was Never "Adjudicated" Nor "Committed" Within the Meaning of Section 922(g)(4)

### (a) Clifton's 2001 Mental Health Treatment Lacked "Robust Judicial Involvement", Or Any Judicial Involvement Whatsoever

11       No judge ever became involved in Clifton's case.  Clifton was never involuntarily

12  committed by any court of law.  Complaint, ¶ 58.  Neither Clifton nor his grandmother recall his

13  hospitalization as being involuntary, nor were they ever informed of their due process rights,

14  including the right to seek judicial review of any involuntary detention.  Complaint, ¶ 20.  It

15  should be inferred that Clifton was never specifically found to be mentally ill and dangerous (as

16  opposed to gravely disabled).  It can be inferred - and if not, Clifton respectfully seeks leave to

17  amend his Complaint to allege that - there are no court records relating to Clifton's hospitalization,

18  certainly no records showing he was adjudicated to be both mentally ill and dangerous.  The

19  CLETS system maintained by the DOJ reflects only that Clifton has a "lifetime" firearms ban

20  entered on July 2, 2001 for a "5250 prohibition" because Clifton is "DTSO (danger to self or

21  others) <u>OR GRAVELY DISABLED</u>."  Complaint ¶¶ 24-25, Exh. A (emphasis added).

22       The Ninth Circuit in *Mai* stated, "Involuntary commitments comport with due process only

23  when the individual is found to be <u>both</u> mentally ill <u>and</u> dangerous."[2]  952 F.3d at 1110 (emphasis

---

[2] Most recently, the Ninth Circuit distinguished *Mai* in denying an as-applied challenge to 18 U.S.C. § 922(g)(4) in *United States v. Bartley* (9th Cir. 2021) 2021 WL 3700341.  The *Bartley* plaintiff had been deemed incompetent to stand trial following a 2011 DUI arrest and the court ordered him committed to a mental hospital.  *Id*. at **1-2.  Six weeks later, the hospital restored his competency and the court terminated the commitment.  *Id*. at *2.  In 2018, indicted for illegally possessing firearms in violation of Section 922(g)(4), the *Bartley* plaintiff argued his commitment did not satisfy *Mai* because there was no finding he was both mentally ill and dangerous.  *Id*. at

1   in the original).  The Ninth Circuit continued, "Additionally, commitments under state-law

2   procedures that lack robust judicial involvement do not qualify as commitments for purposes of

3   922(g)(4)."  *Ibid*. citing *Rehlander*, *supra*, 666 F.3d at 47-49.  Under the California statutory

4   scheme, a 5250 certification can (and here did) occur without any judicial involvement.  See

5   *Stokes*, *supra*, at *6.

6          Clifton never even had a certification review hearing conducted by a court-appointed

7   commissioner or a referee, or by a certification review hearing officer that took place at the

8   psychiatric facility pursuant to Welfare and Institutions Code sections 5251.6 and 5275.  See

9   Complaint ¶¶ 20, 58.  He was never found to be both mentally ill and dangerous, certainly not by

10  way of any court process.

11         Clifton's circumstances mirror those of the *Stokes* plaintiff, where the Northern District

12  Court found that because there was no judicial involvement, much less "robust judicial

13  involvement," "so under *Mai*, there was no 'commitment' within the meaning of Section

14  922(g)(4)."  *Stokes, supra* at *9).  While the federal regulations appear to define "commitment"

15  under more relaxed standards, that is, "formal commitment of a person to a mental institution by a

16  court, board, commission or other lawful authority," (27 C.F.R. 478.11), Section 922(g)(4) only

17  uses the term "adjudicated" without referencing "board, commission or other lawful authority."

18  *Stokes, supra* at *9.

19         Moreover, the First Circuit pointed out that the statutory language limits commitments to

20  "judicial commitments" because to prohibit gun possession simply by those who were or are

21  mentally ill and dangerous is a "free floating prohibition" that would be "very hard to administer,

22

23  *3.  The Ninth Circuit found the *Bartley* plaintiff's commitment proceedings comported with due

24  process and that "nowhere does the statute [Section 922(g)(4)] or regulation [27 C.F.R. § 478.11]
    require a finding that the committed person was both mentally ill and dangerous."  *Id*. at *4.

25  While this language appears on the outset to conflict with *Mai*, the Ninth Circuit clarified that
    *Mai*'s conclusion was based on the fact that the *Mai* plaintiff had actually been found by a court

26  (perhaps more than once) to be both mentally ill and dangerous; thus the involuntary commitment
    satisfied due process for a Section 922(g)(4) commitment.  *Ibid*.; see also *6. The Ninth Circuit

27  further noted that Section 922(g)(4)'s firearms prohibition was less of a burden on the *Bartley*
    plaintiff because, as an Idaho resident, state law provides a process for the restoration of rights that

28  uses the federal standard.  *Id*. at *6.  The *Bartley* opinion does not affect the analysis as to Clifton.

1   although perhaps not impossible.  That is why, as with the ban on prior felons, Congress sought to

2   piggyback on determinations made in <u>prior judicial proceedings</u> to establish status." *Rehlander,*

3   *supra*, 666 F.3d at 50 (emphasis in the original).

4        The Ninth Circuit not only cited *Rehlander* for this principle but also expressly restricted

5   Section 922(g)(4) to those commitments with "robust judicial involvement." *Id*. at 1110.  The

6   Court concluded: Section "922(g)(4)'s prohibition as to those who were committed involuntarily

7   applies not to persons who theoretically might be dangerous at some point in their lives.  Instead,

8   it applies only to those <u>who were found, through procedures satisfying due process,</u> actually

9   dangerous in the past." *Id*. at 1121 (emphasis added).  The *Mai* court was careful to note that its

10  holding is limited to Section 922(4)(g)'s prohibition on those who have "been committed to a

11  mental institution." *Ibid*.  "We emphatically do not subscribe to the notion that 'once mentally ill,

12  always so.'" *Ibid*.

13       Clifton has properly alleged that his 15-day" [hospitalization for mental health treatment

14  when he was 13 years old] did not include procedures satisfying due process, particularly in

15  paragraphs 20, 35, 36, 58.  However, should this Court grant Defendants' Motion, Clifton

16  respectfully requests that it be without prejudice or with leave to amend his complaint to more

17  specifically allege that he was not "committed to a mental institution" because his 2001

18  hospitalization lacked "robust judicial involvement."

19

20        **(b) Clifton's 5250 Certification Does Not Establish that He was Found to Be**
       **Both Mentally Ill and Dangerous**

21       The Ninth Circuit held in *Mai* that "[i]nvoluntary commitments comport with due process

22  only when the individual is found to be <u>both</u> mentally ill <u>and</u> dangerous."  952 F.3d. at 1110

23  (emphasis in the original).  Clifton has never been found, and certainly not through procedures

24  satisfying due process, to be both mentally ill and dangerous.  The incident that led to his

25  hospitalization when he was 13 years old did not involve violence or even threats of violence.

26  Complaint, ¶¶ 16-17.  It was simply an expression of trauma by a child subjected to a physically

27  and emotionally abusive home environment.  Complaint, ¶¶ 14-15.

28

The Ninth Circuit in *Mai* was clear that Section 922(g)(4)'s prohibition "applies not to persons who theoretically might be dangerous at some point in their lives.  Instead, it applies only to those who were found, through procedures satisfying due process, actually dangerous in the past."  925 F.3d at 1121.  However, the only evidence of Clifton's 5250 certification, the California DOJ CLETS "firearms summary" states that he was "DTSO [danger to self or others] or GRAVELY DISABLED."  Complaint ¶ 25, Exh. A.  As the *Stokes* court queried, "which was it?  Gravely disabled?  Or DTSO?  It matters."  *Stokes, supra* at *10.  "Gravely disabled minor" means "a minor who, as a result of a mental disorder, is unable to use the elements of life that are essential to health, safety, and development, including food, clothing, and shelter, even though provided to the minor by others.  Intellectual disability, epilepsy, or other developmental disabilities, alcoholism, other drug abuse, or repeated antisocial behavior do not, by themselves, constitute a mental disorder."  Welf. & Inst. Code § 5585.25.  "Grave disablement is not enough under Mai."  *Stokes, supra*, *10.  A notation on the CLETS entry, even if it could be construed as a "finding," of dangerous or disabled does not suffice.  Thus, there was no "commitment" as set forth in *Mai*.

Finally, under the Welfare and Institutions Code, a minor could theoretically be involuntarily held for mental health evaluation and treatment regardless of his own consent, if "authorization for voluntary treatment" by a parent or guardian "is not available." Welf. & Inst. Code 5585.50(a).  As well, Section 5250 certifications could be based on Clifton being <u>unable</u> to accept treatment voluntarily, rather than being <u>unwilling</u> to accept treatment voluntarily, further pushing Clifton's case out of the reach of *Mai* and Section 922(g)(4)'s prohibition.

**2.  Clifton's Challenge Withstands Intermediate Scrutiny Because Section 922(g)(4) As Applied to Him Does Not Reasonably Fit the Government's Statutory Interests**

**(a) An As-Applied Challenge Should Look Only at the Individual Facts Before the Court**

Clifton's specific circumstances are simply more on par with the plaintiffs in *Stokes* and *Keyes* than *Mai*.  An "as-applied challenge" is a claim

> that the operation of a statute is unconstitutional in a particular case, while a 'facial' challenge alleges the statute may rarely or never be constitutionally applied. When faced with a claim that application of a statute renders it unconstitutional, a court must analyze the statute as applied to the particular case, i.e., how it operates in practice against the particular litigant and under the facts of the instant case, not hypothetical facts in other situations. 16 C.J.S. Constitutional Law § 187.

> [A]n as-applied challenge claims [ ] the government's conduct as permitted by a statute violated the defendant's rights. The violation is specific to the facts of the defendant's case, and the statute is flawed only to the extent it permitted the government to act in that case. In contrast, a facial challenge claims [ ] the defendant was acted upon pursuant to a statute that itself was constitutionally improper. The harm claimed is not a direct violation of the defendant's constitutional rights, but rather a more abstract claim that the defendant was acted upon pursuant to a statute that has some kind of constitutional defect." <u>Wal-Mart Stores, Inc. v. City of Turlock</u>, 483 F. Supp. 2d 987, 996–97 (E.D. Cal. 2006); accord Young v. Hawaii, 992 F.3d 765, 779 (9th Cir. 2021).

In *Keyes, supra*, the District Court applied Third Circuit precedent concluding that "'[t]o raise a successful as-applied challenge, [the challenger] must present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections.'"  195 F.Supp.3d 702 quoting *Barton*, *supra*, 633 F.3d 168, at 174.  This standard is significantly more in line with a violation specific to the facts of a specific case than the standard used in *Mai*.

The Ninth Circuit expressly acknowledged *Mai* was an as-applied challenge and its conclusion is specific to the *Mai* plaintiff in that the court upheld the firearms prohibition based on the Washington state court's previous finding for the involuntary commitment that *Mai* was mentally ill and dangerous.  However, the intermediate scrutiny framework, derived in the Ninth Circuit from the two-step test set forth in *United States v. Chovan* (9th Cir. 2013) 735 F.3d 1127,

MESSING ADAM &
JASMINE LLP
ATTORNEYS AT LAW

00111401-3

22

Case No. 1:21-cv-00089-DAD-EPG

Opposition to Motion to Dismiss

1136, uses broad brush strokes to encompass an entire class of people, not the *Mai* plaintiff's

individual circumstances.  The *Mai* court even expressly described the issue before it as

"[w]hether Section 922(g)(4)'s prohibition on the possession of firearms by <u>persons who have</u>

<u>been committed to a mental institution</u> comports with the Second Amendment."  952 F.3d at 1113

(emphasis added).

In *Heller, supra*, the Supreme Court declined to establish a level of scrutiny for evaluating

Second Amendment restrictions, warning that the Second Amendment was not subject to a

"freestanding 'interest-balancing' approach."  554 U.S. at 634.  The "very enumeration of the right

takes out of the hands of government … the power to decide on a case-by-case basis whether the

right is really worth insisting upon."  *Ibid*.

The District Court in *Keyes* expressly stated that judicial interest balancing or "means-end

scrutiny "seems to be a more appropriate framework for reviewing facial challenge under the

Second Amendment."  195 F.Supp.3d at 717.  After all, "[i]t is axiomatic that a statute may be

invalid as applied to one state of facts and yet valid as applied to another."  *Ayotte v. Planned

Parenthood of N. New England* (2006) 546 U.S. 320, 329.  This is a totally different analysis from

the government having to show, to satisfy intermediate scrutiny, a "significant, substantial or

important" statutory objective and a "reasonable fit" between the challenged law and that

objective.  *Mai, supra*, 952 F.3d at 1115.  Logic dictates the same considerations here.

**(b)  Even Applying Intermediate Scrutiny, Section 922(g)(4) is
Unconstitutional As Applied to Clifton**

Clifton does not dispute the government's important interests in preventing crime and

preventing suicide and that Section 922(g)(4)'s lifetime firearms ban may very well provide a

reasonable fit with those important interests.  But his situation does not conflict with those

important interests, nor is a lifetime firearms prohibition - that limits Clifton's career in law

enforcement - a reasonable fit for his circumstances.  In other words, Clifton has alleged facts

about himself and his background that distinguish his circumstances from those of persons

historically barred from Second Amendment protections.  The Third Circuit framework simply

makes more sense.

MESSING ADAM &
JASMINE LLP
ATTORNEYS AT LAW

00111401-3

23

Case No. 1:21-cv-00089-DAD-EPG

Opposition to Motion to Dismiss

There are no allegations or indications that Clifton contemplated or articulated the possibility of suicide prior to his hospitalization in 2001.  Furthermore, Clifton did not commit any crime.  In fact, under California law, a child under the age of 14 is not even capable of committing a crime, unless "at the time of committing the act charged against them, they knew its wrongfulness."  Cal. Pen. Code § 26.

Nevertheless, the entirety of the *Mai* analysis, including especially the lengthy recitation of scientific evidence by the government showing an increased risk of violence for those who have been released from involuntary commitment and an increased risk of suicide for those with a history of mental illness, as well as the evidence supporting the argument that the risk never completely goes away, is negated by Clifton's history of safe possession and use of firearms in the military and as a federal correctional officer.  Although the *Mai* court notes that "the Second Amendment does not demand 'an individualized hearing' to assess Plaintiff's own level of risk (952 F.3d at 1119 quoting *Tyler, supra*, 837 F.3d at 698, fn. 18 (and disregarding, for the moment, that this seems to fly in the fact of a true as-applied challenge), Clifton's level of risk has already been established and accepted as minute to nonexistent.

Clifton served in the infantry and saw combat during overseas deployments in the United States Marine Corps.  Complaint ¶ 27.  He was required to possess and be prepared to use a firearm as a Corrections Officer with the Federal Bureau of Prisons, a position that authorized him to possess and carry a personal firearm.  Complaint ¶ 28.  Clifton possessed and used firearms without incident in his professional capacity for 12 years.  Complaint ¶¶ 27-28.  He has also had to pass at least three background investigations, for the military, the Federal Bureau of Prisons and for his current position as a Correctional Officer for the Fresno County Sheriff's Office.  Complaint ¶¶ 27-29.  Clifton has properly alleged that Section 922(g)(4)'s lifetime firearms ban does not provide a reasonable fit with the government's important interests as they relate to him.

As the District Court mused regarding the *Keyes* plaintiff, whose path subsequent to his hospitalization mirrors Clifton's, Defendants' position "attempts to avoid the clear irony" of the situation.  195 F.Supp.3d at 721.  It "requires a suspension of logic" to believe that Clifton is and has been (including right out of high school) "mentally stable enough to possess and use various

MESSING ADAM &
JASMINE LLP
ATTORNEYS AT LAW

00111401-3

24

Case No. 1:21-cv-00089-DAD-EPG

Opposition to Motion to Dismiss

1   types of firearms in his professional capacity, including putting his life on the line for his country

2   while on active military duty, but is not mentally stable enough to possess a firearm for self-

3   protection in his home."  Accord *Keyes*, 195 F. Supp.3d at 721.  Clifton has thus stated a valid as-

4   applied challenge under the Second Amendment that should be allowed to proceed to hearing.

5

6   **B. The Due Process and Equal Protection Claims Raised by Clifton Should Receive a Hearing on Their Merits**

7   The Section 922(g)(4) lifetime firearms prohibition was entered by the DOJ in its CLETS

8   system under Clifton's name when he was just 13 years old.  He had never used a firearm.  He had

9   never threatened anyone with a firearm.  He had never threatened to use a firearm.  Clifton never

10  knew his father.  His mother had passed away.  His home environment with his grandmother was

11  upended when she married into an abusive relationship. Even without this backdrop, Clifton still

12  had to navigate the challenges of his South Central Los Angeles neighborhood and high school.

13  Clifton's Second and Third Claims are not duplicative of his Second Amendment claim.

14  Instead, Clifton alleges that, in the alternative, the <u>continued application</u> of the Section 922(g)(4)

15  lifetime firearms prohibition <u>with no process for applying for relief</u> violates his equal protection

16  and due process rights.  There are multiple legitimate bases for this allegation.  For example, 34

17  USC 40915, which allows and provides requirements for the states to set up and run a "relief from

18  disabilities" program, as-applied to California citizens such as Clifton, violates Clifton's right to

19  equal protection under the law because California has no such qualifying program while 32 other

20  states do.  Clifton alleges he is similarly situated to citizens of other states that have a relief from

21  disabilities program that complies with Section 40915 yet lacks the same federal protection. *City*

22  *of Cleburne v. Cleburne Living Ctr.* (1985) 473 U.S. 432, 439 (Equal Protection Clause ensures

23  that "all persons similarly situated should be treated alike").  Clifton's ability to receive even a

24  hearing on his fundamental right to bear arms is entirely dependent on what state he lives in.  This

25  is unequal treatment based on an arbitrary distinction and therefore cannot withstand even rational

26  basis review.

27  As discussed above, Clifton has raised a cognizable claim that the government has violated

28  his Second Amendment rights and accordingly, he has been deprived of a fundamental right under

1   substantive due process.  Additionally, the lack of forum to address his fitness to possess firearms

2   in the State of California violates his rights to procedural due process.  Defendants argue that

3   Clifton has failed to allege deprivation of a liberty interest aside from the Second Amendment

4   claim that would require due process.  However, it can be inferred from the Complaint that Clifton

5   has a liberty interest in his Second Amendment right to bear arms, his Fourth Amendment right to

6   be free from unreasonable searches and seizures and perhaps even his Eighth Amendment right to

7   be free from cruel and unusual punishment (lifetime firearms prohibition for a 13-year old with a

8   single incident and no avenue for appeal too severe for the "crime" committed).  That is, Clifton

9   has a right to due process to remove the federal firearms restriction.

10         The Ninth Circuit noted that the failure of the *Mai* plaintiff to raise several arguments, such

11   as: (1) the standard by which federal courts should measure whether persons are sufficiently

12   rehabilitated for purposes of the Second Amendment; (2) the application of the substantive

13   standards defined in 34 U.S.C. 40915; (3) an equal-protection claim that, because persons in thirty

14   other states benefit from programs applying Section 40915's substantive standards, he too is

15   entitled to relief or an opportunity to meet those standards; and (4) due process demands the same

16   results.  952 F.3d at 1113.  The Ninth Circuit acknowledged its sole review was for whether the

17   Second Amendment requires that the *Mai* plaintiff be allowed to possess firearms.  *Ibid*.

18         Clifton's Complaint (hopefully) makes these claims. See Complaint ¶¶ 67-79.  If Clifton

19   did not properly phrase his allegations, he respectfully requests the dismissal be without prejudice

20   or that he be granted leave to amend his Complaint.

21   **VI.   CONCLUSION**

22         As it has been applied to Clifton thus far, the law is being used to validate the heavy-

23   handed use of authority without due process to strip an individual of his Constitutional rights.  At

24   a minimum, Respondents' interpretation would perpetuate continued unwarranted consequences.

25   Clifton has lawfully stated claims that 18 U.S.C. § 922(g)(4) and 34 U.S.C. § 40915 have directly

26   violated and/or contributed to the ongoing violation of his constitutional rights to bear arms, due

27   process and equal protection of the law.  In light of the *Stokes* Order that negates *Mai* as binding

28   on Clifton's circumstances as well as the narrowness of the *Mai* holding and its framework for an

1  as-applied challenge that conflicts with the U.S. Supreme Court in *Heller*, procession of this case

2  to hearing is critical to help the issue "percolate" as argued by Defendants in opposing the grant of

3  certiorari in *Mai* by the U.S. Supreme Court.[3]  For these and each of the reasons set forth above,

4  Clifton respectfully requests that this Court deny Defendants' Motion to Dismiss in its entirety.

5       In the alternative, Clifton respectfully requests that he be granted leave to amend his

6  Complaint to state a cognizable claim that Section 922(g)(4) and California's lack of a qualifying

7  relief from disabilities program satisfying 34 U.S.C. § 40915 are unconstitutional as applied to

8  him.

9  Dated:  September 7, 2021        Respectfully submitted,

10          MESSING ADAM & JASMINE LLP

11

12          By _____

13          Lina Balciunas Cockrell

14          Attorneys for Plaintiff Dominique Clifton

---

[3] https://www.supremecourt.gov/DocketPDF/20/20-819/172461/20210319154123986_20-819%20Mai%20Opp%203.18.pdf