1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10
11

DOMINIQUE CLIFTON,

No.  1:21-cv-00089-DAD-EPG

12

Plaintiff,

13

v.

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS

14

UNITED STATES DEPARTMENT OF
JUSTICE, et al.,

15

Defendants.

(Doc. No. 13)

16
17
18

This matter is before the court on the motion to dismiss filed by defendants the United

19

States Department of Justice, the Acting Attorney General, the United States Bureau of Alcohol,

20

Tobacco, Firearms and Explosives ("ATF"), the Federal Bureau of Investigation ("FBI"), and the

21

directors of the ATF and the FBI in their official capacities (collectively "defendants").[1]  (Doc.

22
23
24
25
26
27
28

---

[1]  The undersigned apologizes for the excessive delay in the issuance of this order.  This court's overwhelming caseload has been well publicized and the long-standing lack of judicial resources in this district long-ago reached crisis proportion.  While that situation was partially addressed by the U.S. Senate's confirmation of district judges for two of this court's vacancies on December 17, 2021 and June 21, 2022, another vacancy on this court with only six authorized district judge positions was created on April 17, 2022.  For over twenty-two months the undersigned was left presiding over approximately 1,300 civil cases and criminal matters involving 735 defendants. That situation resulted in the court not being able to issue orders in submitted civil matters within an acceptable period of time and continues even now as the undersigned works through the predictable backlog.  This has been frustrating to the court, which fully realizes how incredibly frustrating it is to the parties and their counsel.

No. 13.)  In light of the ongoing public health emergency posed by the COVID-19 pandemic, defendants' motion was taken under consideration based on the papers.  (Doc. No. 14.)  For the following reasons, the court will grant in part and deny in part the motion to dismiss filed on behalf of defendants.

## BACKGROUND

This case arises out of plaintiff's inability to purchase a firearm because federal law prohibits him from doing so.  On January 21, 2021, plaintiff Dominique Clifton filed this action against defendants.  (Doc. No. 1.)  Plaintiff alleges as follows in his complaint.

In 2001, plaintiff was in eighth grade at Mt. Vernon Middle School in Los Angeles, California.  (*Id.*)  He was thirteen years old at the time.  (*Id.*)  Because plaintiff's mother had passed away and he never knew his father, plaintiff then lived with his grandmother.  (*Id.* at ¶ 14.)  His grandmother's husband—plaintiff's step-grandfather—was physically and mentally abusive toward both plaintiff and his grandmother.  (*Id.*)  One day in June of 2001, while at an after-school program, plaintiff made comments about "what he would like to do toward his step-grandfather in order to protect himself and his grandmother."  (*Id.* at ¶ 15.)  Plaintiff never directly threatened anyone nor took any action to harm his step-grandfather.  (*Id.* at ¶ 16.)  Nevertheless, the school called a Psychiatric Emergency Team ("PET"), which consisted of licensed mental health clinicians approved by the County of Los Angeles Department of Mental Health to provide Welfare and Institutions Code §§ 5150 and 5585 evaluations.  (*Id.* at ¶ 18.)  Upon evaluation by the PET, plaintiff was hospitalized for mental health treatment at Gateways Hospital and Mental Health Center in Los Angeles, California for 15 days—from June 12 through June 27, 2001.  (*Id.* at ¶ 19.)  Although plaintiff was initially hospitalized for only 72 hours pursuant to § 5150, his hospitalization was extended by 14 days for intensive treatment pursuant to § 5250.  (*Id.* at ¶¶ 18, 19, 35.)

Upon his release from the hospital, plaintiff was not prescribed any continuing medication, nor was he required to receive any further psychiatric treatment, including therapy or counselling.  (*Id.* at ¶ 21.)  Plaintiff alleges that he was never notified of his right to seek judicial review of an involuntary hold and that he was never informed of any long-term repercussions as a

2

result of his psychiatric hold.  (*Id.* at ¶ 20.)  Nevertheless, plaintiff lost his private capacity to own a firearm as a result of 18 U.S.C. § 922(g), which prohibits an individual who has been involuntarily committed to a mental institution from owning, possessing, using, or purchasing a firearm or ammunition.  (*Id.* at ¶ 22.)  Notably, 18 U.S.C. § 925(a)(1) provides an exception to this firearms ban under federal law for state actors acting in their official capacity.

Plaintiff went on to graduate from high school and enlist in the United States Marine Corps in 2005.  (*Id.* at ¶ 27.)  Under § 925(a)(1), plaintiff was permitted to handle a firearm during his time with the marines.  (*Id.*)  Plaintiff completed three combat deployments before leaving active duty in 2013 and received an Honorable Discharge as a Sergeant.  (*Id.*)  Subsequently, plaintiff was hired by the Federal Bureau of Prisons as a corrections officer in 2015.  (*Id.* at ¶ 28.)  He remained in that position until April 2019, when he resigned in good standing.  (*Id.*)  Plaintiff is informed and believes that both his service in the marines and his employment as a federal correctional officer required a complete background investigation that would have revealed his past hospitalization.  (*Id.*)

On April 8, 2019, the Fresno County Sheriff's Office hired plaintiff as a correctional officer at the Fresno County Jail.  (*Id.*)  Prior to being hired in this role, plaintiff underwent and passed a full psychological evaluation that confirmed he is mentally fit to possess and use a firearm.  (*Id.* at ¶ 31.)  Then, in 2020, plaintiff applied for a "Deputy Sheriff I" position in the Fresno County Sheriff's Office.  (*Id.* at ¶ 32.)  This time, when Fresno County ran a background check, the California Department of Justice statewide telecommunications system reported plaintiff's prior hospitalization implicating his lifetime firearms ban under federal law.  (*Id.*)

As a result of plaintiff's federal firearms restriction, the Fresno County Sheriff's Office declined to sponsor plaintiff's entry into the "Basic Academy under the California Commission on Peace Officer Standards and Training" (i.e., "POST Academy") and represented that it will not consider plaintiff for a sworn deputy sheriff position.  (*Id.* at ¶ 33.)  Thus, although 18 U.S.C. § 925(a) provides an exception to the firearms ban under 18 U.S.C. § 922(g)(4) for state or federal actors operating in their official capacity, Fresno County has declined to seek to apply that exception to plaintiff.  (*Id.* at ¶ 45.)  Under state and federal law, there is no other proceeding that

3

1    plaintiff can bring to expunge or extinguish his lifetime firearms restrictions under federal law.

2    (*Id.* at ¶ 41.)

3        Based on the foregoing, plaintiff asserts the following causes of action:  (1) Second

4    Amendment as-applied violation against all defendants; (2) Fifth Amendment Equal Protection

5    and Due Process violations against all defendants; and (3) Fourteenth Amendment Equal

6    Protection and Due Process violations against all defendants.  (*Id.* at ¶¶ 54–79.)  Plaintiff requests

7    that this court declare 18 U.S.C. § 922(g)(4) to be unconstitutional as applied to him.  Further,

8    plaintiff seeks an order from this court enjoining defendants from enforcing 18 U.S.C. § 922(g)(4)

9    against plaintiff "unless [plaintiff] is afforded an opportunity to demonstrate his fitness and

10    thereby seek relief from 18 U.S.C. § 922(g)(4) and all related laws, derivative regulations,

11    policies, and procedures."  (*Id.* at 14.)

12        On August 2, 2021, defendants filed their pending motion, seeking dismissal of plaintiff's

13    complaint in its entirety.  (Doc. No. 13.)  On September 7, 2021, plaintiff filed his opposition to

14    defendants' motion to dismiss, and on September 23, 2021, defendants filed their reply thereto.

15    (Doc. Nos. 16, 19.)

16                              **LEGAL STANDARD**

17        The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

18    sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

19    1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

20    sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

21    F.2d 696, 699 (9th Cir. 1990).  A claim for relief must contain "a short and plain statement of the

22    claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Though Rule 8(a)

23    does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state

24    a claim for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

25    (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  "A claim has facial plausibility when the

26    plaintiff pleads factual content that allows the court to draw the reasonable inference that the

27    defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  In determining whether a

28    complaint states a claim on which relief may be granted, the court accepts as true the allegations

1  in the complaint and construes the allegations in the light most favorable to the plaintiff.  *Hishon*

2  *v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir.

3  1989).  It is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or

4  that the defendants have violated the . . . laws in ways that have not been alleged." *Associated*

5  *Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

6  "Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by

7  amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008).  To the extent

8  that the pleadings can be cured by the allegation of additional facts, courts will generally grant

9  leave to amend.  *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247

10  (9th Cir. 1990) (citations omitted).

## ANALYSIS

12  Federal law prohibits a person "who has been adjudicated as a mental defective[2] or who

13  has been committed to a mental institution" from possessing a firearm or ammunition.  18 U.S.C.

14  § 922(g)(4).  Federal law has provided two potential avenues for relief from this lifetime ban, but

15  both have been foreclosed to all California residents.  *See Stokes v. United States Dep't of Justice*,

16  551 F. Supp. 3d 993, 997 (N.D. Cal. 2021).

17  First, prior to 1992, a person in plaintiff's position could have applied to the United States

18  Attorney General for relief under 18 U.S.C. § 925(c), which provided "for relief from the

19  disabilities imposed by Federal laws with respect to the . . . possession of firearms." *Mai v.*

20  *United States*, 952 F.3d 1106, 1111 (9th Cir. 2020).  Under 18 U.S.C. § 925(c), the Attorney

21  General may, but is not required to, grant relief "if it is established to his satisfaction that the

22  circumstances regarding the disability, and the applicant's record and reputation, are such that the

23  applicant will not be likely to act in a manner dangerous to public safety and that the granting of

24  the relief would not be contrary to the public interest."  18 U.S.C. § 925(c); *see also United States*

---

26  [2]  The court notes, as has the Ninth Circuit and the Department of Justice, that the statutory phrase

27  "mental defective" is an unfortunate historical relic in the United States Code and does not

28  comport at all with current usage. *See United States v. Bartley*, 9 F.4th 1128, 1133 n.1 (9th Cir. 2021) (citing Amended Definition of "Adjudicated as a Mental Defective" and "Committed to a Mental Institution" Summary, 79 Fed. Reg. 774 (proposed Jan. 7, 2014)).

1   *v. Bean*, 537 U.S. 71, 77 (2002) (noting the discretionary nature of the decision and observing that

2   relief may be denied "even when the statutory prerequisites are satisfied").  However, since 1992,

3   Congress "has prohibited the use of funds to act on such applications, disabling the program."

4   *Stokes*, 551 F. Supp. 3d at 997.  "Congress defunded the program because, among other reasons,

5   determining eligibility had proved to be 'a very difficult and subjective task which could have

6   devastating consequences for innocent citizens if the wrong decision is made.'"  *Mai*, 952 F.3d at

7   1111 (quoting S. Rep. No. 102-353, at 19 (1992)).

8          Second, the states may establish programs under 34 U.S.C. § 40915 to provide

9   opportunities for relief from the prohibition imposed by § 922(g)(4).  To qualify to do so, the

10  state's program must "permit[] a person who, pursuant to State law, . . . has been committed to a

11  mental institution, to apply to the State for relief from the disabilities imposed by" 18 U.S.C.

12  § 922(g)(4) and other laws.  34 U.S.C. § 40915(a)(1).  The program also must provide:

13              That a State court, board, commission, or other lawful authority shall
                grant relief, pursuant to State law and in accordance with the
14              principles of due process, if the circumstances regarding the
                disabilities . . ., and the person's record and reputation, are such that
15              the person will not be likely to act in a manner dangerous to public
                safety and that the granting of the relief would not be contrary to the
16              public interest.

17  *Id.* § 40915(a)(2).  The state program must additionally allow a person to petition a state court

18  "for a *de novo* judicial review of [a] denial."  *Id.* § 40915(a)(3).  "For a person granted relief

19  under a qualifying state program, § 922(g)(4)'s prohibition on the possession of firearms does not

20  apply."  *Mai*, 952 F.3d at 1112 (citing 34 U.S.C. § 40915(b)).  "Thirty-one states and two tribal

21  governments have established such programs, but California has not."  *Stokes*, 551 F. Supp. 3d at

22  997 (citing BUREAU OF JUSTICE STATES., *NICS Act Record Improvement Program (NARIP)*

23  *Awards FY 2009–2020*).  Specifically, California law does not require a determination "that the

24  person will not be likely to act in a manner dangerous to public safety and that the granting of the

25  relief would not be contrary to the public interest."  34 U.S.C. § 40915(a)(2); *see also* Cal. Welf.

26  & Inst. Code §§ 8103(g)(1)(i), (g)(4).  Accordingly, as a California resident, plaintiff currently

27  /////

28  /////

1    faces a lifetime ban from possession of a firearm with no opportunity for relief.[3]

2         In his complaint, plaintiff alleges that his constitutional right under the Second

3    Amendment to possess firearms, as well as his constitutional rights to due process, and to equal

4    protection under the law have been violated by him being prohibited for life from owning a

5    firearm as a result of his 2001 psychiatric treatment.  The court will address each of plaintiff's

6    causes of action and the arguments made in connection with the pending motion to dismiss in

7    turn.

8    **A.      Plaintiff's Second Amendment Right to Possess Firearms Claim**

9         In his first cause of action, plaintiff alleges that the federal laws and policies prohibiting

10   him from purchasing, possessing, and utilizing a firearm constitute an over-broad infringement

11   and an impermissible burden on his individual right to keep and bear arms under the Second

12   Amendment of the United States Constitution.  (Doc. No. 1 at ¶ 62.)  Plaintiff seeks relief from

13   the firearms ban imposed upon him by federal law because the Fresno County Sheriff's Office

14   will not hire him until that ban is lifted and also because "given his work with inmates, both at the

15   federal and county level, Clifton desires a personal firearm for the defense of his home, should it

16   become necessary."  (Doc. No. 16 at 8–9.)

17        In their motion to dismiss, defendants cite the Supreme Court's decision in *District of*

18   *Columbia v. Heller*, 554 U.S. 570, 626 (2008), where the Court recognized that the Second

19   Amendment "was not a right to keep and carry any weapon whatsoever in any manner

20   whatsoever for whatever purpose."  (Doc. No. 13-1 at 5.)  In *Heller*, the Supreme Court

21   emphasized that nothing in its opinion "should be taken to cast doubt on longstanding

22   prohibitions on the possession of firearms by felons and the mentally ill."  *Heller*, 554 U.S. at

23   626.  Defendants note that the Supreme Court "identified such prohibitions as 'presumptively

24   lawful,' because they affect classes of individuals who, historically, have not had the right to keep

25   _____

26   [3]  Plaintiff was subjected to a state firearms prohibition, in addition to his federal ban, as a result
     of his § 5250 certification in 2001.  (Doc. No. 1 at ¶ 36.)  Specifically, plaintiff was barred from

27   purchasing firearms pursuant to California Welfare and Institutions Code § 8103.  (*Id.* at ¶ 38.)
     However, this ban under state law expired in 2006, leaving only plaintiff's federal ban in place.

28   (*Id.*)

1   and bear arms." (Doc. No. 13-1 at 5) (citing *Heller*, 554 U.S. at 627 n.36). Defendants also rely

2   on the Ninth Circuit's recent decision in *Mai*, 952 F.3d 1106. (*Id.* at 6.) In *Mai*, a plaintiff

3   committed for mental health treatment as a minor alleged that § 922(g)(4)'s "continued

4   application to him despite his alleged return to mental health and peaceableness violate[d] the

5   Second Amendment." *Mai*, 952 F.3d at 1109. The Ninth Circuit disagreed with that contention,

6   holding that § 922(g)(4)'s continued application did not violate the Second Amendment. *Id.* at

7   1109–10. Defendants argue that this court should dismiss plaintiff's Second Amendment claim

8   pursuant to the Ninth Circuit's decision in *Mai*, which is binding precedent. (Doc. No. 13-1 at 6–

9   7.)

10      In his opposition to defendants' motion, plaintiff argues that *Mai* does not foreclose his

11   challenges to § 922(g)(4) as that statute is being applied to him because, unlike in *Mai*, here (1)

12   there was no judicial involvement in plaintiff's hospitalization for mental health treatment and (2)

13   plaintiff was never found to be *both* mentally ill *and* dangerous.[4] (Doc. No. 16 at 18.)

14      1.   Judicial Involvement

15      The court first addresses plaintiff's argument that the alleged lack of judicial involvement

16   in his initial hospitalization should foreclose the applicability of § 922(g)(4) to him. Pursuant to

17   18 U.S.C. § 922(g)(4), federal law bars individuals who have been "committed to a mental

18   institution" from possessing firearms. *Mai*, 952 U.S. at 1110. In *Mai*, the Ninth Circuit stated

19   that commitments under state-law procedures that "lack robust judicial involvement" do not

20   qualify as commitments for purposes of § 922(g)(4). *Id.* (citing *United States v. Rehlander*, 666

21   F.3d 45, 47–49 (1st Cir. 2012)). Plaintiff seizes upon this language in *Mai* and argues that "[n]o

22   judge ever became involved in [plaintiff's] case." (Doc. No. 16 at 18.) Rather, plaintiff asserts

23

24   _____

   [4] Plaintiff also appears to contend that § 5250 certifications can be based on being *unable* to

25   accept treatment voluntarily as opposed to being *unwilling* to accept treatment voluntarily. (Doc.
    No. 16 at 18.) However, plaintiff does not explain the relevance of this argument to a § 922(g)(4)

26   prohibition. In the court's view, plaintiff appears to be arguing that if he were unable (as opposed
    to unwilling) to accept treatment on a voluntary basis, then his treatment would not be

27   involuntary under § 922(g)(4) and thus that statute would not apply. However, resolving this
    argument does not prove necessary with respect to ruling on the pending motion. Accordingly,

28   the court will not address plaintiff's underdeveloped argument in this regard at this time.

1   that he was never involuntarily committed by any court of law and "there are no court records

2   relating to [plaintiff's] hospitalization, certainly no records showing he was adjudicated to be both

3   mentally ill and dangerous." (*Id.*) In support of this argument, plaintiff contends that under the

4   California statutory scheme for involuntary commitment procedures, "a 5250 certification can

5   (and here did) occur without any judicial involvement." (*Id.* at 19) (citing *Stokes*, 551 F. Supp. 3d

6   at 1001). In fact, plaintiff alleges in his complaint that he never received any hearing conducted

7   by "a court-appointed commissioner or a referee," let alone a hearing by way of any court

8   process. (*Id.*) Citing the First Circuit's decision in *Rehlander*, plaintiff further argues that the

9   reason § 922(g)(4) is limited to *judicial* commitments is "because to prohibit gun possession

10  simply by those who were or are mentally ill and dangerous is a 'free floating prohibition' that

11  would be 'very hard to administer, although perhaps not impossible.'" (*Id.* at 19–20) (citing

12  *Rehlander*, 666 F.3d at 50). "That is why, as with the ban on prior felons, Congress sought to

13  piggyback on determinations made in prior judicial proceeding to establish status" with respect to

14  the mentally ill. (*Id.* at 20.) Based on this authority, plaintiff concludes that he has properly

15  alleged in his complaint that his 15-day hospitalization for mental health treatment when he was

16  13 years old does not qualify as a "commitment to a mental institution" under § 922(g)(4)

17  because it lacked "robust judicial involvement." (*Id.* at 20.)

18         In reply, defendants argue that plaintiff's assertions defy the text of the statute at issue.

19  (Doc. No. 19 at 4.) As explained above, 18 U.S.C. § 922(g)(4) prohibits the possession of a

20  firearm by any person who "has been *adjudicated* as a mental defective" or who "has been

21  *committed* to a mental institution." *Id.* (emphasis added). According to defendants, holding that

22  an involuntary commitment must be by court order in order to fall within the statute's reach

23  would ignore "the distinction Congress created between 'adjudicated' and 'committed' in Section

24  922(g)(4), and would [be] inconsistent with the implementing regulations that define 'committed

25  to a mental institution' as '[a] formal commitment . . . by a court, board, commission, or other

26  lawful authority.'" (Doc. No. 19 at 4) (quoting 27 C.F.R. § 478.11). Defendants then summarize

27  how, under California Welfare and Institutions Code § 5250, California law grants the committed

28  person the right to a hearing at which to challenge a § 5250 certification upon request of the

1  detained person or a person acting on their behalf.  (*Id.* at 5) (citing Cal. Welf. & Inst. Code §§

2  5275, *et seq.*).  Thus, according to defendants, plaintiff's involuntary commitment in 2001

3  qualifies as a commitment under § 922(g)(4) because the procedures under California law

4  "provide for robust judicial involvement, whether or not Plaintiff availed himself of those

5  procedures."  (*Id.*)

6          The court finds plaintiff's arguments at this pleading stage to be persuasive and concludes

7  plaintiff has adequately alleged that his 2001 hospitalization does not constitute an involuntary

8  commitment involving robust judicial involvement under § 922(g)(4).  At the time of plaintiff's

9  hospitalization, California Welfare and Institutions Code § 5150 required the officer, staff person,

10 or other professional who caused the person to be taken into custody to state the circumstances

11 giving rise to probable cause that, because of a mental disorder, the person was a danger to others,

12 himself, or gravely disabled, in a written application to the facility or hospital.  *See Stokes*, 551 F.

13 Supp. 3d at 1000.  However, "Section 5150 provided no hearing."  *Id.*  California Welfare and

14 Institutions Code § 5250 then authorized hospital staff to certify a person for an additional 14

15 days of treatment, which is what plaintiff alleges occurred with respect to his hospitalization here.

16 (*See* Doc. No. 16 at 6.)

17          California Welfare and Institutions Code § 5250 provides as follows:

18              If a person is detained for 72 hours [under § 5150] and has received
                an evaluation, he or she may be certified for not more than 14 days
19              of intensive treatment related to the mental disorder or impairment
                by chronic alcoholism, under the following conditions:
20
21              (a) The professional staff of the agency or facility providing
                    evaluation services has analyzed the person's condition and has
22                  found the person is, as a result of mental disorder or impairment
                    by chronic alcoholism, a danger to others, or to himself or herself,
23                  or gravely disabled.

24              (b) The facility providing intensive treatment is designated by the
                    county to provide intensive treatment, and agrees to admit the
25                  person.  No facility shall be designated to provide intensive
                    treatment unless it complies with the certification review hearing
26                  required by this article.  The procedures shall be described in the
                    county Short-Doyle plan as required by Section 5651.3.

27              (c) The person has been advised of the need for, but has not been
                    willing or able to accept, treatment on a voluntary basis.
28

Cal. Welf. & Inst. Code § 5250; *see also Stokes*, 551 F. Supp. 3d at 1001.  As at least one other district court in the Ninth Circuit has recognized, no judge necessarily becomes involved in a certification under California Welfare & Institutions Code § 5250, and once a patient becomes certified, the burden is on the patient to seek release by way of a petition for a writ of habeas corpus.  *Stokes*, 551 F. Supp. 3d at 1004.  That said, if the facility determines it is appropriate to hold the committed person longer than seventy-two hours, California Welfare & Institutions Code § 5150(i)(1) does require the treating facility to notify the committed person of his or her right to an attorney and a hearing before a judge.[5]

Other federal circuit and district courts have concluded that similar procedures do not qualify as commitments under § 922(g)(4).  For example, in *Rehlander*, the First Circuit concluded that temporary hospitalizations carried out by way of an *ex parte* procedure—not unlike the procedure alleged here pursuant to California Welfare & Institutions Code § 5250—did not constitute a commitment under the provisions of § 922(g)(4).  *Rehlander*, 666 F.3d at 49–50. Relying in part on the decision in *Rehlander*, the district court in *Stokes* concluded that certifications pursuant to California Welfare & Institutions Code § 5250 that do not involve a judicial order or a hearing before a judge cannot constitute commitments that fall under the purview of § 922(g)(4).  *Stokes*, 551 F. Supp. 3d at 1004–05.  Moreover, the two Ninth Circuit cases to address commitment procedures in the context of § 922(g)(4) both involved judicial determinations that the plaintiffs required institutionalization and in both cases the plaintiffs had been represented by counsel at those court proceedings.  *See, e.g.*, *United States v. Bartley*, 9 F.4th 1128, 1132 (9th Cir. 2021) ("Bartley was examined by a qualified psychologist and represented by counsel, and the determination that he was not fit to proceed was made by the

---

[5]  In *Stokes*, the government argued that a plaintiff's failure to take advantage of the opportunity for a hearing before a judge qualified as a waiver of any judicial involvement.  *See Stokes*, 551 F. Supp. 3d at 1007.  The district court in *Stokes* rejected that argument, concluding that the government's assertion "reduces to the manifest contradiction that someone who is so mentally ill that he or she must be involuntarily confined nevertheless has sufficient soundness of mind to knowingly and intelligently waive his or her right to seek judicial review."  *Id.*  Here, the undersigned agrees with the reasoning of the district court in *Stokes* and concludes that plaintiff has adequately alleged that there was no judicial involvement in his 2001 certification, when he was a mere 13 years old, regardless of any *potential* for judicial review of that action at the time.

court based on the examiner's findings."); *Mai*, 952 F.3d at 1110 (finding that a Washington state court's involuntarily commitment of plaintiff for mental health treatment after he threatened himself and others qualified as a "commitment" pursuant to § 922(g)(4)); *see also United States v. Mcilwain*, 772 F.3d 688, 689, 697 (11th Cir. 2014) (concluding that the appellant's commitment by an Alabama probate court constituted a commitment under § 922(g)(4) where the appellant had "received a formal hearing, was represented by an attorney, and the state probate court heard sworn testimony and made substantive findings of fact that it included in its formal order of commitment"); *United States v. Midgett*, 198 F.3d 143, 146 (4th Cir. 1999) (concluding that the defendant's confinement fell squarely within any reasonable definition of "committed" as used in § 922(g)(4), where he "was examined by a competent mental health practitioner" and represented by counsel, and a judge heard evidence, made factual findings, concluded that he suffered from a mental illness, and issued an order committing him to a mental institution).[6]

In his complaint in this action, plaintiff has alleged that he "he was never involuntarily committed by any court of law." (Doc. No. 1 at ¶ 58.)  Based on these allegations, the court cannot definitively say at this stage of the litigation that there was "robust judicial involvement" in plaintiff's initial § 5250 hospitalization.  *See Mai*, 952 F.3d at 1110.  Thus, the court concludes that plaintiff has adequately alleged that there was no "commitment" within the meaning of that word as used in § 922(g)(4).  Absent authority to the contrary, the court must abide by the Ninth Circuit's conclusion in *Mai*.  Of course, on summary judgment for instance, the evidence may establish that plaintiff's 2001 certification did indeed include the level of judicial involvement necessary for § 922(g)(4) to apply to him.  For example, plaintiff may have appeared at a

---

[6] The court recognizes that the ATF implementing regulation states that a commitment could include a "formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority."  27 C.F.R. § 478.11.  Nevertheless, the statute itself does not reference a board, commission, or other lawful authority, and both the First Circuit in *Rehlander* and the district court in *Stokes* concluded that the statute should be limited to commitment procedures that provide for adversarial proceedings before independent judicial or administrative officers to test whether the subject is mentally ill or dangerous.  *See Rehlander*, 666 F.3d at 47, 50; *Stokes*, 551 F. Supp. 3d at 1005.  No facts alleged in plaintiff's complaint suggest that such an adversarial proceedings prior to plaintiff's commitment occurred here.  At best, the level of judicial involvement remains an open-ended question in this case that is better suited for analysis and resolution on summary judgment, after discovery has taken place.

1 certification hearing that was conducted by either a court-appointed commissioner or a court-

2 appointed referee.  Moreover, evidence may have been presented by plaintiff at such a hearing,

3 and plaintiff may have had an opportunity to contest his hospitalization.  If the evidence

4 established as much, perhaps the commitment would not qualify as "a permanent *ex parte*

5 deprivation of" plaintiff's recognized Second Amendment right.  *Rehlander*, 666 F.3d at 48–49.

6 Nonetheless, at the pleading stage, where the court must view all factual allegations in the light

7 most favorable to plaintiff, the court cannot make such determinations.  Plaintiff has alleged in his

8 complaint that there was no judicial involvement in his 2001 commitment and the court must take

9 that allegation as true.  Accordingly, the court will deny defendants' motion to dismiss to the

10 extent it is based on the arguments that plaintiff's 2001 commitment pursuant to California

11 Welfare and Institutions Code § 5250 qualified under § 922(g)(4) as a commitment to a mental

12 institution.

13        2.        Whether a Finding of Both Mental Illness and Dangerousness is Necessary

14        The court next addresses plaintiff's argument that involuntary commitments for mental

15 health treatment only fall within the provisions of § 922(g)(4) when the individual is committed

16 based on a finding that he or she is *both* mentally ill and dangerous.[7]  (Doc. No. 16 at 20.)

17 According to plaintiff, the only existing evidence of his § 5250 certification in 2001 states that he

18 was either dangerous *or* gravely disabled, but there is nothing suggesting that he was found to be

19 both at that time.  (*Id.* at 21.)

20        Although the Ninth Circuit employed somewhat ambiguous language in its decision in

21 *Mai* that arguably suggested that an individual must be found both mentally ill and dangerous in

22 order for § 922(g)(4) to apply to them, any ambiguity in that regard was undeniably cleared up by

23 the court in its decision in *Bartley*, 9 F.4th 1128.  In *Bartley*, the Ninth Circuit unequivocally

24 stated that "[n]owhere does the statute or regulation require a finding that the committed person

25

26 [7]  Given that defendants' motion to dismiss will be denied on the grounds that plaintiff has
adequately alleged that there was a lack of robust judicial involvement in his 2001 commitment,

27 the court is not required to address his argument that he was not found to be both mentally ill and
dangerous at that time.  Notwithstanding, the court finds it prudent to quickly dispel plaintiff's

28 arguments in this regard in order to avoid confusion at the later stages of this litigation.

1   was both mentally ill *and* dangerous." *Bartley*, 9 F.4th at 1133 (emphasis added).  Although the

2   court in *Mai* held that a person who has been found to be both mentally ill and dangerous is

3   irrefutably the sort of person who § 922(g)(4) applies to, "[i]t did not hold that findings of both

4   mental illness and dangerousness are always necessary in order for a state commitment to come

5   within the meaning of § 922(g)(4)."  *Id.*  "Such a requirement would be inconsistent with the

6   plain language of the statute."  *Id.*  Accordingly, "a finding of actual dangerousness is not

7   required for the statute to apply to him."  *Id.* at 1135.  In other words, although a finding of both

8   mental illness and dangerousness would be sufficient to trigger § 922(g)(4), such a finding is not

9   necessary.  A finding of only one of the two will do.

10         Here, plaintiff has conceded that his 2001 certification pursuant to California Welfare &

11   Institutions Code § 5250 occurred either because he was a danger or because he was gravely

12   disabled.  (Doc. No. 16 at 21.)  In light of the Ninth Circuit's decision in *Bartley*, a finding as to

13   only one of these two situations is necessary for § 922(g)(4)'s firearms prohibition to apply.

14   Plaintiff's arguments are therefore unpersuasive.  The federal statute's prohibition would apply to

15   him regardless of whether he was involuntarily committed as a result of a finding of

16   dangerousness or a finding of mental illness.

17         3.      Intermediate Scrutiny and the Second Amendment

18         Plaintiff also contends that the Ninth Circuit incorrectly analyzed the Second Amendment

19   claim presented in *Mai*.  (Doc. No. 16 at 22.)  In that case the Ninth Circuit held that § 922(g)(4)

20   was constitutional because "the Second Amendment allows categorical bans on groups of persons

21   who presently pose an increased risk of violence."  *Mai*, 952 F.3d at 1116–17 (citing *United*

22   *States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (*en banc*)).  The court reached this conclusion

23   by applying intermediate scrutiny to § 922(g)(4).  *Id.* at 1115.  The Ninth Circuit has adopted a

24   two-step inquiry in deciding Second Amendment cases.  *See Silvester v. Harris*, 843 F.3d 816,

25   820–21 (9th Cir. 2016).  First, the court asks whether the challenged law burdens conduct

26   protected by the Second Amendment.  *Id.* at 821.  Second, the court applies the appropriate level

27   of scrutiny to the challenged law.  *Id.*  In *United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013),

28   /////

1    the Ninth Circuit collected cases from other circuits which employed a similar two step inquiry

2    and determined it to be the appropriate test.

3            In the first step of this inquiry, the court asks if the challenged law burdens conduct

4    protected by the Second Amendment based on a "historical understanding of the scope of the

5    right." *Silvester*, 843 F.3d at 821 (quoting *Heller*, 554 U.S. at 625).  "Whether the challenged law

6    falls outside the scope of the Amendment involves examining whether there is persuasive

7    historical evidence showing that the regulation does not impinge on the Second Amendment right

8    as it was historically understood." *Id.*  "Laws restricting conduct that can be traced to the

9    founding era and [that] are historically understood to fall outside of the Second Amendment's

10   scope may be upheld without further analysis." *Id.* (citing *Peruta v. County of San Diego*, 824

11   F.3d 919 (9th Cir. 2016)).  "A challenged law may also fall within the limited category of

12   'presumptively lawful regulatory measures' identified in *Heller*." *Id.*  However, if the regulation

13   is subject to Second Amendment protections, "the court then proceeds to the second step of the

14   inquiry to determine the appropriate level of scrutiny to apply." *Id.* (citation omitted).  "In

15   ascertaining the proper level of scrutiny, the court must consider:  (1) how close the challenged

16   law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on

17   that right." *Id.*  Different levels of scrutiny apply depending on how intrusive the law is on the

18   Second Amendment.  *Id.*  "A law that imposes such a severe restriction on the fundamental right

19   of self-defense of the home that it amounts to a destruction of the Second Amendment right is

20   unconstitutional under any level of scrutiny." *Id.*  Alternatively, a law that implicates the core of

21   the Second Amendment right and severely burdens that right requires strict scrutiny.  *Id.*  As to all

22   other laws, intermediate scrutiny is appropriate.  *Id.*  To uphold a regulation or law under

23   intermediate scrutiny "(1) the government's stated objective must be significant, substantial, or

24   important; and (2) there must be a 'reasonable fit' between the challenged regulation and the

25   asserted objective." *Id.* at 821–22 (citing *Chovan*, 735 F.3d at 1139).

26           As referenced above, the first step of the Ninth Circuit's two-step inquiry to assess

27   whether a law violates the Second Amendment is to ask whether the challenged law burdens

28   conduct protected by the Second Amendment.  *Mai*, 952 F.3d at 1113.  "A law does not burden

Second Amendment rights 'if it either falls within one of the presumptively lawful regulatory measures identified in *Heller* or regulates conduct that historically has fallen outside the scope of the Second Amendment.'" *Id.* (quotation marks omitted).  As to this first-step of the inquiry, the Ninth Circuit in *Mai* was quick to note that "[t]he Supreme Court identified as presumptively lawful the 'longstanding prohibitions on the possession of firearms by felons and the mentally ill.'" *Id.* at 1114 (quoting *Heller*, 554 U.S. at 626).  "Like the federal prohibition as to felons, § 922(g)(4) had been on the books for decades when the Court decided *Heller*." *Id.*  Moreover, "historical evidence supports the view that society did not entrust the mentally ill with the responsibility of bearing arms." *Id.* (citing *Beers v. Attorney General*, 927 F.3d 150, 157–58 (3rd Cir. 2019) (summarizing the historical evidence)).  The court in *Mai* went on to note that "[t]he government [had] presented a strong argument that . . . § 922(g)(4) does not burden Second Amendment rights." *Id.*  Nonetheless, the Ninth Circuit deferred resolving the case on that basis and instead assumed, without deciding, that "§ 922(g)(4), as applied to Plaintiff, burdens Second Amendment rights." *Id.* at 1115.  Therefore, the court moved to step two in order to conduct an intermediate scrutiny analysis.  Applying intermediate scrutiny, the Ninth Circuit concluded that § 922(g)(4)'s prohibition on those who have been involuntarily committed to a mental institution was a reasonable fit for purposes of advancing the important goal of reducing gun violence. *Id.* at 1121.  Accordingly, the court in *Mai* upheld the constitutionality of § 922(g)(4).  The Ninth Circuit reaffirmed this conclusion in *Bartley*, holding that "[t]he prohibition on Bartley's right to possess a firearm [in light of his prior commitment to a mental institution] is 'presumptively lawful,' not an unconstitutional burden." *Bartley*, 9 F.4th at 1136.

Here, plaintiff argues that this district court should stray from these prior holdings of the Ninth Circuit that applied intermediate scrutiny to Second Amendment challenges.  Plaintiff contends that instead of upholding §922(g)(4)'s categorical ban on gun ownership for those who have been involuntarily committed for mental health treatment, this court should engage in a case-by-case fact specific analysis, wherein any plaintiff may present facts about himself or herself that distinguish his or her circumstances from those of persons historically barred from gun ownership.  (Doc. No. 16 at 22.)  Plaintiff appears to argue that the intermediate scrutiny

16

1    framework consistently applied by the Ninth Circuit should be abandoned in any case where an
2    as-applied constitutional challenge to a statute is mounted on Second Amendment grounds.  (*Id.*
3    at 22–23.)

4        Defendants counter that "*Mai* is the precedent that governs in this district . . . and the
5    analysis in *Mai* precludes Plaintiff's claim that Section 922(g)(4) is unconstitutional as applied to
6    him." (Doc. No. 19 at 6.)  In particular, defendants argue that in *Mai*, the Ninth Circuit held that
7    § 922(g)(4) withstands Second Amendment scrutiny "regardless of the plaintiff's current level of
8    risk and despite the fact that the plaintiff has no other avenue for relief from the firearms ban."
9    (*Id.* at 7) (citing *Mai*, 952 F.3d at 1121).  Defendants conclude that the holding in *Mai* is
10   dispositive in this case and requires that plaintiff's argument, that § 922(g)(4) is unconstitutional
11   as applied to him, be rejected.  (*Id.* at 8.)  Until quite recently, defendants' argument in this regard
12   would have been unquestionably well taken since this court is undoubtedly bound by the Ninth
13   Circuit's prior decisions.

14       However, the Ninth Circuit's Second Amendment jurisprudence has now at least arguably
15   been somewhat cast into doubt due to the Supreme Court's recent decision in *New York State*
16   *Rifle & Pistol Association, Inc. v. Bruen*, __U.S.__, 142 S. Ct. 2111, 2022 WL 2251305 (U.S.
17   June 23, 2022).  The majority opinion in that case suggests that the two-part intermediate scrutiny
18   approach to certain Second Amendment challenges may no longer govern.  *See Bruen*, 142 S. Ct.
19   at ___, 2022 WL 2251305, at *8–9 ("Today, we decline to adopt that two-part approach. . . .
20   Despite the popularity of this two-step approach, it is one step too many.")  "To justify its
21   regulation, the government may not simply posit that the regulation promotes an important
22   interest." *Id.* at *8.  "Rather, the government must demonstrate that the regulation is consistent
23   with this Nation's historical tradition of firearm regulation." *Id.*  "Only if a firearm regulation is
24   consistent with this Nation's historical tradition may a court conclude that the individual's
25   conduct falls outside the Second Amendment's 'unqualified command.'" *Id.*  Indeed, cases have
26   already been remanded to both the Ninth Circuit and its respective district courts for further
27   consideration in light of the Supreme Court's decision in *Bruen. See, e.g.*, *Young v. Hawaii*,
28   __U.S.__, 2022 WL 2347578 (U.S. June 30, 2022) ("The judgment is vacated, and the case is

17

1   remanded to the United States Court of Appeals for the Ninth Circuit for further consideration in

2   light of *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. ---- (2022)); *Rupp v. Bonta*,

3   2022 WL 2382319, at *1 (9th Cir. June 28, 2022) ("[T]his case is remanded to the district court

4   for further proceedings consistent with the United States Supreme Court's decision in *New York*

5   *Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. ---- (2022)).

6        Nevertheless, the undersigned notes that in Justice Kavanaugh's concurring opinion in

7   *Bruen*, in which Chief Justice Roberts joined, it was stated that "[n]othing in [the Court's] opinion

8   should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons

9   and the mentally ill . . . ." *Bruen*, 2022 WL 2251305, at *39 (Kavanaugh, J., concurring) (quoting

10  *Heller*, 554 U.S. at 626–27 & n.26 and *McDonald v. Chicago*, 561 U.S. 786 (2010)).  Moreover,

11  the Supreme Court has previously recognized that in enacting § 922(g)(4), Congress sought "to

12  keep firearms out of the hands of presumptively risky people." *Dickerson v. New Banner Inst.,*

13  *Inc.*, 460 U.S. 103, 112 (1983).  Based on the presumptive constitutionality of § 922(g)(4) due to

14  the historical evidence supporting laws barring the mentally ill from owning firearms, the

15  undersigned strongly believes that § 922(g)(4) would be upheld by the Supreme Court, regardless

16  of any new, as of yet undefined and unapplied, interpretation methods developed in light of the

17  decision in *Bruen*.[8]  That is not a question that this court must answer today.  In fact, it would

18  likely be irresponsible to do so in light of the many cases that will undoubtedly address both the

19  holding in *Bruen* and how it is to be applied in this Circuit.  Moreover, of course, neither party

20  has briefed those issues in this case.  Instead, because the court will deny defendants' motion to

21  dismiss as to plaintiff's Second Amendment claim on the basis that plaintiff has adequately

22  alleged that he was never "committed" for mental health treatment as that term is used in

23  § 922(g)(4), the court need not address the constitutionality of § 922(g)(4) in this order.  If—after

24  further briefing and conducting of discovery—the court is again faced with that question, it will

25  address it at that time.

26  ───────────────

27  [8] As persuasively pointed out by the dissent in *Bruen,* "Judges understand well how to weigh a law's objectives (its 'ends') against the methods used to achieve those objectives (its 'means'). Judges are far less accustomed to resolving difficult historical questions." *Bruen*, 2022 WL

28  2251305, at *51 (Breyer, J., dissenting).

1    **B.**     **Plaintiff's Due Process and Equal Protection Claims**

2              In his second and third claims, plaintiff asserts that his right to equal protection and due

3    process under the Fifth and Fourteenth Amendments to the U.S. Constitution are violated by

4    § 922(g)(4)'s application to him.  (Doc. No. 1 at 12–14.)  Plaintiff bases these claims on the fact

5    that California has not implemented a relief-from-disabilities program to restore federal firearm

6    rights that complies with the substantive standards of 34 U.S.C. § 40915.  (*Id.* at ¶ 69.)  With

7    respect to equal protection, plaintiff alleges that the citizens of 32 states currently have the benefit

8    of being able to restore their firearms rights under 34 U.S.C. § 40915 and yet he does not.  (*Id.* at

9    ¶ 76.)  This, plaintiff avers, violates his right to equal protection of the laws guaranteed by the

10   Fifth and Fourteenth Amendments.  (*Id.*)  With respect to his due process claim, plaintiff alleges

11   that he "has been deprived of a process by which to petition to restore his federal firearms rights

12   through" a relief-from-disabilities program that meets 34 U.S.C. § 40915's substantive standards.

13   (*Id.* at ¶ 77.)  Instead, he asserts, he "is burdened with a lifetime federal firearms restriction with

14   no right of appeal."  (*Id.*)

15             As an initial matter, plaintiff cannot sue the federal government under the Fourteenth

16   Amendment, which is what plaintiff's third cause of action sets out to do.  The Fifth

17   Amendment's Due Process Clause applies to the federal government while the Fourteenth

18   Amendment's Due Process Clause applies only to the states.  *See Castillo v. McFadden*, 399 F.3d

19   993, 1002 n.5 (9th Cir. 2005).  None of the defendants in this action are state or local actors.

20   Accordingly, plaintiff's third cause of action as brought pursuant to the Fourteenth Amendment

21   will be dismissed.

22             1.     Equal Protection Claim

23             As to plaintiff's Fifth Amendment equal protection claim, defendants argue that 34 U.S.C.

24   § 40915 does not burden anyone's rights; instead, "it provides a mechanism for relief from the

25   disabilities imposed by 18 U.S.C. § 922(g)(4)."  (Doc. No. 13-1 at 8.)  Defendants contend that

26   where "a law neither burdens a fundamental right nor targets a suspect class, a court shall uphold

27   the legislative classification so long as it bears a rational relation to some legitimate end."  (*Id.*)

28   (citing *Heller v. Doe by Doe*, 509 U.S. 312, 319–20 (1993)).  Defendants conclude that the

1  requirements of 34 U.S.C. § 40915 survive rational basis review because its goals are rationally

2  related to legitimate state interests.[9]  (*Id.*)

3      In opposition, plaintiff argues—in conclusory fashion—that he has adequately alleged an

4  equal protection violation because "he is similarly situated to citizens of other states that have a

5  relief from disabilities program that complies with Section 40915" yet he lacks the same federal

6  protection.  (Doc. No. 16 at 25.)  Plaintiff asserts that this is "unequal treatment based on an

7  arbitrary distinction and therefore cannot withstand even rational basis review."  (*Id.*)

8      In addressing a claim that a statute or regulation violates a plaintiff's right to equal

9  protection, the court must first determine whether the plaintiff is similarly situated to other people

10  not affected by the law at issue.  *Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 926 (9th

11  Cir. 1993).  In other words, plaintiff must show that the state has adopted a classification that

12  affects two or more similarly situated groups in an unequal manner.  *Safeway Inc. v. City and

13  County of San Francisco*, 797 F. Supp. 2d 964, 971 (N.D. Cal. 2001).  If the plaintiff establishes

14  that the groups are similarly situated, the court then applies the appropriate level of scrutiny.  *Id.*

15  The court applies strict scrutiny where a law "targets a suspect class or burdens the exercise of a

16  fundamental right," but if the law "does not concern a suspect or semi-suspect class or a

17  fundamental right," the court applies rational basis review, asking whether the law "is rationally-

18  related to a legitimate government interest."  *Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037,

19  1047 (9th Cir. 2002) (citation omitted).  As a general matter, a classification is suspect if it is

20  directed to a discrete and insular minority group.  *Sanchez v. City of Fresno*, 914 F. Supp. 2d

21  1079, 1108 (E.D. Cal. 2012).  Courts have found that race, alienage, national origin, and to some

22  degree, gender and illegitimacy, are suspect classes.  *Id.*  "A suspect class is often defined as a

23  group 'saddled with such disabilities, or subjected to such history of purposeful unequal

24  treatment, or relegated to such a position of powerlessness as to command extraordinary

25  protection from the majoritarian political process.'"  *Culinary Studios, Inc. v. Newsom*, 517 F.

26

27  [9]  Plaintiff does not appear to argue that 34 U.S.C. § 40915 burdens a fundamental right.  Rather,
    plaintiff bases his equal protection claim entirely on the ground that 34 U.S.C. § 40915 allows

28  those in some states to seek relief from 18 U.S.C. § 922(g)(4), while those in other states may not.

1   Supp. 3d 1042, 1072 (E.D. Cal. 2021) (quoting *Owens v. Ventura Cnty. Superior Court*, 42 F.

2   Supp. 2d 993, 998 (C.D. Cal. 1999)).

3          The classification in this case—as determined by 34 U.S.C. § 40915—is drawn between

4   states that "grant . . . relief, pursuant to State law" upon a finding "that the person will not be

5   likely to act in a manner dangerous to public safety and that the granting of the relief would not

6   be contrary to the public interest," and those that do not.  Put simply, the classification is between

7   citizens of different U.S. states.  The statute therefore certainly does not involve a suspect class.

8   *See, e.g.*, *Matsuo v. United States*, 532 F. Supp. 2d 1238, 1248 (D. Haw. 2008), *aff'd* 586 F.3d

9   1180 (9th Cir. 2009) (federal pay equality statute that excluded residents of certain states did not

10  involve a suspect classification).  Plaintiff points to no authority suggesting otherwise.

11  Accordingly, rational basis review applies here and the court is to determine only whether the

12  statute is rationally related to a legitimate government interest.  *Honolulu Weekly*, 298 F. 3d at

13  1047.  The burden is on the one attacking the legislative arrangement to negate every conceivable

14  basis which might support it, and "the classification must be upheld against equal protection

15  challenge if there is any reasonably conceivable state of facts that could provide a rational basis

16  for the classification."  *Doe by Doe*, 509 U.S. at 319–20 (citation and quotation marks omitted).

17         Here, the court concludes that 34 U.S.C. § 40915's classification between citizens of

18  different states is rationally related to legitimate government interests.  The legitimate

19  government interest here is "the government's laudable goal of preventing gun violence."  *Mai*,

20  952 F.3d at 1117.  The Ninth Circuit recognized in *Mai* that § 40915 was a political compromise

21  in nationwide gun legislation because while it provided an avenue for relief to "some of the least

22  dangerous," it did so "only in exchange for greatly improved enforcement as to all the rest,

23  including the most dangerous."  *Id.* at 1119.[10]  Although § 40915 was enacted so that states with

24  qualifying restoration-of-rights programs could provide some relief from the complete firearms

25  ban imposed by 18 U.S.C. § 922(g)(4), § 40915 was only implemented as part of a broader

26  _____

27  [10]  The Ninth Circuit in *Mai* went on to state that it did not read § 40915 "as disturbing the
    longstanding congressional judgment—supported by scientific evidence—that those who were
    involuntarily committed to a mental institution pose an increased risk of violence even years after
28  their release."  952 F.3d at 1120.

1   agreement to upgrade the "National Instant Criminal Background Check System." *Id.* at n.8

2   (citing 153 Cong. Rec. 15,676 (2007) ("In order to move the legislation to the floor, it was

3   necessary to make some accommodations [including the addition of § 40915] to incorporate the

4   concerns of gun owners.") (statement of Rep. Conyers)).  Accordingly, § 40915 is simply a

5   product of a broader gun legislation compromise that demanded some form of relief to those

6   otherwise facing a lifetime ban.  The condition that qualifying state restoration programs must

7   require previously committed individuals to establish that they are not dangerous and that relief

8   from § 922(g)(4)'s ban would not be against the public interest is obviously rationally related to

9   legitimate state interests in gun safety.  Thus, § 40915 satisfies rational basis review.

10          Defendants' motion to dismiss will therefore be granted to the extent it seeks dismissal of

11   plaintiff's equal protection claim.  *See Doe by Doe*, 509 U.S. at 321 ("[C]ourts are compelled

12   under rational-basis review to accept a legislature's generalizations even when there is an

13   imperfect fit between means and ends.")

14          2.      Due Process Claim

15          As to plaintiff's due process claim, defendants note that "the nature of the due process

16   claim that Plaintiff attempts to assert is unclear."  (Doc. No. 13-1 at 9.)  To the extent plaintiff is

17   attempting to bring a substantive due process claim, defendants argue that he cannot bring such a

18   claim because his rights are more appropriately analyzed under the Second Amendment.  (*Id.* at

19   10) (citing *Nordyke v. King*, 644 F.3d 776, 794 (9th Cir. 2011)).  Next, to the extent plaintiff is

20   asserting a procedural due process claim, defendants argue that his claim fails because

21   § 922(g)(4) applies equally to any person who has been committed to a mental institution, "such

22   that a hearing on Plaintiff's current state of mind is not relevant."  (*Id.* at 11.)

23          Plaintiff responds that he has a liberty interest in his Second Amendment right to bear

24   arms, his Fourth Amendment right to be free from unreasonable searches and seizures, and

25   "perhaps his Eighth Amendment right to be free from cruel and unusual punishment (lifetime

26   firearms prohibition for a 13-year old with a single incident and no avenue for appeal too severe

27   for the 'crime' committed)."  (Doc. No. 16 at 26.)  These arguments, however, appear to pertain

28   only to a possible substantive due process violation claim.  As to any procedural due process

1  argument, plaintiff's sole rebuttal is that "the lack of a forum to address his fitness to possess

2  firearms in the State of California violates his rights to procedural due process."  (*Id.*)

3       Turning first to plaintiff's procedural due process claim, plaintiff has simply alleged no

4  facts nor made any substantive argument in support of such a claim.  "A procedural due process

5  claim has two distinct elements:  (1) a deprivation of a constitutionally protected liberty or

6  property interest, and (2) a denial of adequate procedural protections."  *Brewster v. Bd. of Educ.*

7  *of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).  Plaintiff has not pointed out

8  how either of these elements would be satisfied here.  The court therefore finds that as alleged,

9  plaintiff's procedural due process claim is wholly conclusory and insufficiently pled.  *See Iqbal*,

10  556 U.S. at 678 (explaining that the court need not "accept as true a legal conclusion couched as a

11  factual allegation.").  The court will therefore grant defendants' motion to the extent it seeks

12  dismissal of any procedural due process claim brought by plaintiff.

13       Turning next to plaintiff's substantive due process claim, the court agrees with defendants

14  that the claim is, in essence, simply another form of challenge to the constitutionality of 18 U.S.C.

15  § 922(g)(4).  (*See* Doc. No. 13-1 at 10–11.)  The Supreme Court has been "reluctant to expand the

16  concept of substantive due process because guideposts for responsible decisionmaking in this

17  uncharted area are scarce and open-ended."  *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)

18  (citation omitted).  Instead, "[i]f a constitutional claim is covered by a specific constitutional

19  provision . . . the claim must be analyzed under the standard appropriate to that specific provision,

20  not under the rubric of substantive due process."  *Fontana v. Haskin*, 262 F.3d 871, 882 (9th Cir.

21  2001); *see also Baird v. Becerra*, No. 2:19-cv-00617-KJM-AC, 2020 WL 5107614, at *9 (E.D.

22  Cal. Aug. 31, 2020) (rejecting a plaintiff's "attempt to shoehorn [] Second Amendment claims

23  into a substantive due process claim").

24       Notably, the relief plaintiff seeks both as to his Second Amendment and substantive due

25  process claims is the same—a permanent injunction prohibiting defendants from enforcing 18

26  U.S.C. § 922(g)(4) against him.  (Doc. No. 1 at 14.)  In other words, plaintiff's substantive due

27  process claim is in actuality nothing more than a Second Amendment claim dressed in different

28  clothing.  As discussed above, plaintiff's Second Amendment claim that § 922(g)(4) is

1    unconstitutional would have, until recently, been foreclosed by the Ninth Circuit's decisions in

2    *Mai* and *Bartley*.  However, in the wake of the Supreme Court's decision in *Bruen*, that

3    conclusion has at least been drawn somewhat into question.  The court has determined that it need

4    not rule on plaintiff's Second Amendment claim that § 922(g)(4) is unconstitutional at the motion

5    to dismiss stage of this litigation because certain aspects of that claim may be impacted by the

6    development of an evidentiary record.  Nonetheless, because plaintiff's substantive due process

7    claim is duplicative of his Second Amendment claim, the court will grant defendants' motion to

8    the extent it seeks dismissal of plaintiff's substantive due process claim.

9    **C.      Leave to Amend**

10        Plaintiff requests leave to amend his complaint.  (Doc. No. 16 at 26.)  Generally, "[c]ourts

11   are free to grant a party leave to amend whenever 'justice so requires,' and requests for leave

12   should be granted with 'extreme liberality.'"  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th

13   Cir. 2009).  There are several factors a district court considers in whether to grant leave to amend,

14   including undue delay, the movant's bad faith or dilatory motive, repeated failure to cure

15   deficiencies by amendments previously allowed, undue prejudice to the opposing party, and

16   futility.  *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (citing *Foman v.

17   Davis*, 371 U.S. 178, 182 (1962)).  Of the factors from *Foman*, the court should consider

18   prejudice to the opposing party in particular.  *Id.*; *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d

19   1048, 1052 (9th Cir. 2003).

20        Here, there is no indication that allowing amendment would be prejudicial to defendants,

21   and defendants make no argument to that effect.  There is also no indication that plaintiff has

22   acted in bad faith, and there have been no other attempts to cure the noted pleading deficiencies

23   by way of amendment.  That said, amendment by plaintiff of his equal protection and substantive

24   due process claims would be futile for the reasons noted above.  The only claim dismissed by this

25   order as to which amendment may not be futile is plaintiff's procedural due process claim.

26   Accordingly, plaintiff will be granted leave to amend solely as to that claim.

27   /////

28   /////

**CONCLUSION**

For the reasons set forth above:

1.     The court denies in part and grants in part defendants' motion to dismiss (Doc. No. 13) as follows:

     a.     The court grants defendants' motion to dismiss plaintiff's equal protection, procedural due process, and substantive due process claims;

     b.     Plaintiff is granted leave to amend his complaint only as to his procedural due process claim brought pursuant to the Fifth Amendment, with his equal protection and substantive due process claims being dismissed with prejudice;

     c.     The court denies defendants' motion to dismiss plaintiff's Second Amendment claim; and

2.     Within twenty-one (21) days of service of this order, plaintiff shall file any amended complaint or notify the court of his intention to proceed only on the claims asserted in his original complaint found to be cognizable in this order.

IT IS SO ORDERED.

Dated:  **July 14, 2022**                        
UNITED STATES DISTRICT JUDGE

25